Mario **TARABOCCHIA**, Plaintiff-Appellee-Appellant,

v.

**ZIM ISRAEL NAVIGATION CO., Ltd.,** Defendant & Third Party Plaintiff-Appellant-Appellee,

v.

**JOHN W. McGRATH CORP.,** Third Party Defendant.

**No. 49, Docket 33492.**

United States Court of Appeals Second Circuit.

Argued Sept. 18, 1969.

Decided Oct. 14, 1969.

George T. Delaney, Kenneth Heller, New York City, for plaintiff-appellee-appellant.

Martin J. McHugh, McHugh & Leonard, New York City, for defendant & third party plaintiff-appellant-appellee.

Before MOORE, HAYS and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff, an employee of John W. McGrath Corp. (McGrath), stevedores, on October 28, 1964, was engaged in unloading cargo from the M/V Beersheva, owned by the defendant Zim Israel Navigation Co., Ltd. (Zim Israel). During the unloading operation, he sustained personal injuries for which he brought an action alleging negligence and unseaworthiness of the ship. Zim Israel impleaded McGrath as a third party defendant as liable to it in the event of any recovery by plaintiff. McGrath does not dispute its indemnity obligation. After a non-jury trial, the court awarded plaintiff judgment for $88,323.-25, which included (1) $12,500, "just compensation for past pain and suffering"; (2) $5 a day for 36.3 years (life expectancy) computed by the court as $66,250; (3) lost wages, $8,204; and (4) medical expense, $1,369.25.

Zim Israel appeals, asserting that there was insufficient proof as to negligence; that the doctrine of "operational negligence" does not apply so as to render the ship unseaworthy; that the trial court improperly computed the amount for future pain and suffering; and that the award was excessive.

Plaintiff cross-appealed and argues error by the trial court in holding that the platform on which plaintiff was standing was not "an appurtenance of the M/V Beersheva, and in failing to make a monetary award to plaintiff for alleged impairment of future earning capacity."

As revealed by the facts available to the trial court, plaintiff and a co-worker, Morin, were standing on a temporary landing platform, referred to as a "skid," which was attached to the pier and which extended towards the ship being unloaded. Cargo, in this case plywood, was brought from the ship and landed on the skid. The drafts of plywood were held in place during transit by slings consisting of wire cables with a loop at each end, and they were lifted and lowered by winches and booms on the ship. When the draft settled down on the skid, it was the duty of plaintiff and Morin to detach the slings from the drafts. They did this by unhooking one loop of each sling, thus releasing the sling and allowing the winchmen to pull the cables back to the ship for another load.

Zim Israel makes much by way of argument from the trial court's statement that "It is unclear as to whether Morin dropped his loop to the floor of the skid following the upward thrust of the winch or previous to that exertion of the upward force." 297 F.Supp. 378, 380. It is clear, however, that some force caused the skid to become dislodged from the side of the pier and that plaintiff as a result of the dislodgement fell some twenty feet onto a concrete apron below. The skid was held in place against the pier by means of two metal cables attached to its outer edge and then secured to the face of the pier above the skid. The inner edge of the skid rested on the pier loft by means of three metal "shoes" or lips and the skid was secured on its two corners closest to the pier by Manila rope.

As to the appellate contentions; the trial court was clearly correct in holding on the evidence presented that "The skid was not an appurtenance of the M/V Beersheva." Equally correct was the finding that the cargo sling did not render the ship unseaworthy. Sole reliance for the determination of liability was placed on the principle—to which this Circuit in its effort to construe the Supreme Court's cryptic *per curiam* in Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743

(1967), has seemingly become committed —that "a ship is rendered unseaworthy when longshoremen make negligent use of seaworthy equipment." 297 F.Supp. 378, 382. The trial court, therefore, concluded that plaintiff had "proven unseaworthiness in the improper manner in which the cargo slings were handled by McGrath's employees" (p. 383), and "that these negligent acts, rendering the cargo slings to be unseaworthy, were the proximate cause of the accident" (p. 383).

■ Zim Israel, noting that the Fifth[1] and Ninth[2] Circuits interpret Mascuilli in a manner different from the Second, asks that we take "another and closer look at what the Supreme Court meant by Mascuilli." However, after endeavoring to find the correct meaning in Candiano[3] and Alexander,[4] this Circuit committed itself to the proposition that operational negligence must be equated with unseaworthiness of the ship. We have thus crossed our Rubicon and if we are to retreat from our position, it must be over a bridge constructed by the Supreme Court when, as and if it may choose to resolve the apparent conflict between the Circuits. To hold that a negligent act of an employee of a stevedore can instantaneously turn a proud seaworthy ship into an unseaworthy floating object may seem to defy common sense but "unseaworthiness" may have become a term of art wholly unrelated to reality. Possibly in a semantic way we are dealing with what is "essentially a species of liability without fault." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946). But whatever be the rationalization process, if any, the trial court correctly followed our conception of Mascuilli and his decision as to liability must be affirmed.

■ We also affirm the finding that "the amount of $5.00 per day constitutes fair and reasonable compensation for such immobility and future pain and suffering." We do not agree with the mathematical calculation of the $66,250 figure. The present multiplication of the number of days for the next 36.3 years by $5.00 at an assumed 5% rate produces a figure that would yield a sum vastly in excess of $5.00 per day and leaves the entire principal amount intact for plaintiff's estate. Even using a 5% interest rate, the amount necessary to comply with the finding would be closer to $30,000 than to the $66,250 figure. Accordingly, we remand the case for recalculation of this figure but, with this exception, we affirm.

1. Antoine v. Lake Charles Stevedores, Inc., [5 Cir. 1967], 376 F.2d 443, cert. den. 389 U.S. 869, 88 S.Ct. 145, 19 L.Ed. 2d 146; Robichaux v. Kerr McGee Oil Industries, Inc. [5 Cir. 1967], 376 F.2d 447; Grigsby v. Coastal Marine Service of Texas, Inc. [5 Cir. 1969], 412 F.2d 1011; Luckenbach Overseas Corporation et al. v. Usner [5 Cir. 1969], 413 F.2d 984.

2. The Ninth Circuit in a long line of cases "has consistently rejected any doctrine of 'instant unseaworthiness.'" Tim v. American President Lines, Ltd., 409 F.2d 385, see cases cited at 389. A well-reasoned analysis of what the Supreme Court must have decided in Mascuilli is presented in Tim, namely, "an existing condition which was brought into play by a subsequent negligent act" (p. 391) rather than creating a doctrine of instantaneous unseaworthiness. It was the Court's belief in the Tim opinion that it was "fair to conclude that the Court reversed Mascuilli because of the asserted factual similarity with Crumady [Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413] and did not reach the question of instantaneous unseaworthiness" (p. 392).

3. Candiano v. Moore McCormack Lines, Inc., 382 F.2d 961, rehearing den. 386 F.2d 444, cert. den. 390 U.S. 1027, 88 S.Ct. 1416, 20 L.Ed.2d 284.

4. Alexander v. Bethlehem Steel Corporation, 382 F.2d 963.