400 U.S. 494 (1971)
USNER
v.
LUCKENBACH OVERSEAS CORP. ET AL.
No. 47.
Supreme Court of United States.
Argued November 18, 1970
Decided January 25, 1971
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT.
H. Alva Brumfield argued the cause for petitioner. With him on the brief were Evangeline M. Vavrick and H. Alva Brumfield III.
Charles Kohlmeyer, Jr., argued the cause for respondents. With him on the brief were Thomas W. Thorne, Jr., and Benjamin W. Yancey.
Arthur J. Mandell filed a brief for the American Trial Lawyers Association as amicus curiae urging reversal.
MR. JUSTICE STEWART delivered the opinion of the Court.
The petitioner, a longshoreman employed by an independent stevedoring contractor, was injured while engaged with his fellow employees in loading cargo aboard *495 the S. S. Edgar F. Luckenbach. He brought this action for damages against the respondents, the owner and the charterer of the ship, in a federal district court, alleging that his injuries had been caused by the ship's unseaworthiness.
In the course of pretrial proceedings the circumstances under which the petitioner had been injured were fully disclosed, and they are not in dispute. On the day in question the ship lay moored to a dock in New Orleans, Louisiana, receiving cargo from a barge positioned alongside. The loading operations were being performed by the petitioner and his fellow longshoremen under the direction of their employer. Some of the men were on the ship, operating the port winch and boom at the No. 2 hatch. The petitioner and others were on the barge, where their job was to "break out" the bundles of cargo by securing them to a sling attached to the fall each time it was lowered from the ship's boom by the winch operator. The loading operations had been proceeding in this manner for some time, until upon one occasion the winch operator did not lower the fall far enough. Finding the sling beyond his reach, the petitioner motioned to the flagman standing on the deck of the ship to direct the winch operator to lower the fall farther. The winch operator then lowered the fall, but he lowered it too far and too fast. The sling struck the petitioner, knocking him to the deck of the barge and causing his injuries. Neither before nor after this occurrence was any difficulty experienced with the winch, boom, fall, sling, or any other equipment or appurtenance of the ship or her cargo.
The respondents moved for summary judgment in the District Court, upon the ground that a single negligent act by a fellow longshoreman could not render the ship unseaworthy. The District Court denied the motion, but granted the respondents leave to take an interlocutory *496 appeal under 28 U. S. C. § 1292 (b).[1] The United States Court of Appeals for the Fifth Circuit allowed the appeal and, reversing the District Court, directed that the respondents' motion for summary judgment be granted. 413 F. 2d 984. It was the appellate court's view that " `[i]nstant unseaworthiness' resulting from `operational negligence' of the stevedoring contractor is not a basis for recovery by an injured longshoreman." 413 F. 2d, at 985-986. We granted certiorari, 397 U. S. 933, because of a conflict among the circuits on the basic issue presented.[2]
The development in admiralty law of the doctrine of unseaworthiness as a predicate for a shipowner's liability for personal injuries or death has been fully chronicled elsewhere, and it would serve no useful purpose to repeat the details of that development here.[3] Suffice it to recall *497 that from its humble origin as a dictum in an obscure case in 1922,[4] the doctrine of liability based upon unseaworthiness has experienced a most extraordinary expansion in a series of cases decided by this Court over the last 25 years.[5] The Court's decisions in some of those cases have been severely questioned, by dissenting Justices and by others, on the basis of history, reason, and logic.[6] The present case, however, offers no occasion to re-examine any of our previous decisions. We may accept it as fully settled that a shipowner's liability for an unseaworthy vessel extends beyond the members of the crew and includes *498 a longshoreman like the petitioner.[7] We may accept it as settled, too, that the shipowner is liable though the unseaworthiness be transitory,[8] and though the injury be suffered elsewhere than aboard the ship.[9] But these propositions do not dispose of the case before us. For the question here goes to the very definition of what unseaworthiness is and what it is not.
A major burden of the Court's decisions spelling out the nature and scope of the cause of action for unseaworthiness has been insistence upon the point that it is a remedy separate from, independent of, and additional to other claims against the shipowner, whether created by statute[10] or under general maritime law.[11] More specifically, the Court has repeatedly taken pains to point out that liability based upon unseaworthiness is wholly distinct from liability based upon negligence.[12] The reason, of course, is that unseaworthiness is a condition, and how that condition came into beingwhether by negligence or otherwiseis quite irrelevant to the owner's liability for personal injuries resulting from it.
We had occasion to emphasize this basic distinction again in Mitchell v. Trawler Racer, 362 U. S. 539. There the unseaworthy condition causing the plaintiff's injury *499 was a ship's rail made slippery by the presence of fish gurry and slime. The trial judge had instructed the jury that the shipowner could be held liable for this unseaworthy condition only upon a finding that the slime and gurry had been on the ship's rail for a time long enough for the respondent to have learned about it and to have removed it. The Court of Appeals affirmed the judgment for the defendant shipowner, holding that at least with respect to "an unseaworthy condition which arises only during the progress of the voyage," the shipowner's obligation "is merely to see that reasonable care is used under the circumstances . . . incident to the correction of the newly arisen defect." 265 F. 2d 426, 432. We reversed the judgment, holding that the trial and appellate courts had been wrong in confusing liability for negligence with liability for unseaworthiness. What has evolved in our case law, we said, is the "complete divorcement of unseaworthiness liability from concepts of negligence." 362 U. S., at 550.
Trawler Racer involved the defective condition of a physical part of the ship itself. But our cases have held that the scope of unseaworthiness is by no means so limited. A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective,[13] her appurtenances in disrepair,[14] her crew unfit.[15] The number of men assigned to perform a shipboard task might be insufficient.[16] The method of loading her cargo, or the manner of its stowage, might be improper.[17] For any of these reasons, or others, a vessel might not be reasonably fit for her intended service.
*500 What caused the petitioner's injuries in the present case, however, was not the condition of the ship, her appurtenances, her cargo, or her crew,[18] but the isolated, personal negligent act of the petitioner's fellow longshoreman. To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions.[19] In Trawler Racer, supra, there existed a condition of unseaworthiness, and we held it was error to require a finding of negligent conduct in order to hold the shipowner liable. The case before us presents the other side of the same coin. For it would be equally erroneous here, where no condition of unseaworthiness existed, to hold the shipowner liable for a third party's single and wholly unforeseeable act of negligence. The judgment of the Court of Appeals is affirmed.
It is so ordered.
*501 MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK and MR. JUSTICE BRENNAN concur, dissenting.
While petitioner was working on a barge loading cargo into a hatch of the ship, he was injured as a result of the negligent operation of a winch. The winch was part of the ship and the winch operator was a member of the crew of the stevedores. The injury was caused by a lowering of a sling, which carried the cargo, too quickly and too far.
Prior to the 1970 Term the judgment denying recovery would have been reversed, probably out of hand. We held in Mahnich v. Southern S. S. Co., 321 U. S. 96, that the obligation of an owner to furnish a seaworthy ship extends to seaworthy appliances. We also held that the owner was not insulated from liability by the "negligent failure" of his officers or members of the crew to furnish seaworthy appliances. Id., at 101. In Mahnich, the staging from which the seaman fell was an unseaworthy appliance because of the defective rope with which it was rigged. There was sound rope on board but defective rope was used. The fact that the mate and boatswain were negligent in selecting defective rope was held to be no defense.
In Crumady v. The J. H. Fisser, 358 U. S. 423, a winch was not inherently defective as was the rope in Mahnich. But it was used in a way which made it unsafe and dangerous for the work at hand. While the rigging would take only three tons of stress, the cutoff of the winch, "its safety device," was set at twice that limit. Id., at 427. And so the rope sling broke and injured the seaman. The vessel which paid the damages was allowed to recover over from the stevedores whose negligence with the winch made the vessel pro tanto unseaworthy.
In Mascuilli v. United States, 387 U. S. 237, negligent use of a winch in a loading operation so obviously made *502 the vessel pro tanto unseaworthy that we reversed out of hand a judgment of no liability, citing Mahnich and Crumady.
What we said in Mitchell v. Trawler Racer, 362 U. S. 539, 550, about the "complete divorcement of unseaworthiness liability from concepts of negligence" related to a condition which made the vessel not "reasonably suitable for her intended service." Yet alongside that conventional type of unseaworthiness there developed the concept of unseaworthiness resulting from operational negligence.
Indeed, the doctrine of operational negligence which causes unseaworthiness has had a sturdy growth. Chief Justice Stone, writing for the Court in Mahnich, showed that this doctrine goes at least as far back as The Osceola, 189 U. S. 158, decided in 1903. See 321 U. S., at 101-104. The intervening decision of Plamals v. Pinar del Rio, 277 U. S. 151, which looked the other way, was decided in 1928. It was around that case that Justices Roberts and Frankfurter turned their dissent, saying that unless the Court followed precedent "the law becomes not a chart to govern conduct but a game of chance; instead of settling rights and liabilities it unsettles them." 321 U. S., at 112. They added:
"Respect for tribunals must fall when the bar and the public come to understand that nothing that has been said in prior adjudication has force in a current controversy." Id., at 113.
Justices Roberts and Frankfurter bitterly expressed that view in Mahnich when Pinar del Rio was overruled a freak decision not in keeping with the mainstream of the law that had come before.
Changes in membership do change decisions; and those changes are expected at the level of constitutional law. But when private rights not rooted in the Constitution *503 are at issue, it is surprising to find law made by new judges taking the place of law made by prior judges.
Up to today operational negligence has been one sturdy type of unseaworthiness.[*] I would let it continue as the prevailing rule unless Congress in its wisdom changes it.
MR. JUSTICE HARLAN, dissenting.
Past decisions of this Court have expanded the doctrine of unseaworthiness almost to the point of absolute liability. I have often protested against this development. See, e. g., the cases cited by the Court, ante, at 497 n. 6. But I must in good conscience regard the particular issue in this case as having been decided by Crumady v. The J. H. Fisser, 358 U. S. 423 (1959), even if prior decisions *504 did not inexorably point to that result. As my Brother DOUGLAS states, Crumady cannot justly be distinguished from the case before us. Much as I would welcome a thoroughgoing re-examination of the past course of developments in the unseaworthiness doctrine, I fear that the Court's action today can only result in compounding the current difficulties of the lower courts with this area of the law.
NOTES
[1] 28 U. S. C. § 1292 (b) provides as follows:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."
[2] Compare Candiano v. Moore-McCormack Lines, 382 F. 2d 961 (CA2); Alexander v. Bethlehem Steel Corp., 382 F. 2d 963 (CA2); Cleary v. United States Lines Co., 411 F. 2d 1009 (CA2); and Venable v. A/S Det Forenede Dampskibsselskab, 399 F. 2d 347 (CA4), with Grigsby v. Coastal Marine Service, 412 F. 2d 1011 (CA5), and Tim v. American President Lines, 409 F. 2d 385 (CA9).
[3] See Mitchell v. Trawler Racer, 362 U. S. 539; id., at 550 (Frankfurter, J., dissenting); see also, G. Gilmore & C. Black, The Law of Admiralty 315-332 (1957); Tetreault, Seamen, Seaworthiness, and the Rights of Harbor Workers, 39 Cornell L. Q. 381.
[4] Carlisle Packing Co. v. Sandanger, 259 U. S. 255. There it was said, "[W]e think the trial court might have told the jury that without regard to negligence the vessel was unseaworthy when she left the dock . . . and that if thus unseaworthy and one of the crew received damage as the direct result thereof, he was entitled to recover compensatory damages." 259 U. S., at 259.
[5] Mahnich v. Southern S. S. Co., 321 U. S. 96; Seas Shipping Co. v. Sieracki, 328 U. S. 85; Pope & Talbot, Inc. v. Hawn, 346 U. S. 406; Alaska Steamship Co. v. Petterson, 347 U. S. 396; Rogers v. United States Lines, 347 U. S. 984; Boudoin v. Lykes Bros. S. S. Co., 348 U. S. 336; Crumady v. The J. H. Fisser, 358 U. S. 423; Mitchell v. Trawler Racer, 362 U. S. 539; A. & G. Stevedores v. Ellerman Lines, 369 U. S. 355; Gutierrez v. Waterman S. S. Corp., 373 U. S. 206; Waldron v. Moore-McCormack Lines, 386 U. S. 724.
[6] See, e. g., Mahnich v. Southern S. S. Co., supra, at 105 (Roberts, J., joined by Frankfurter, J., dissenting), Seas Shipping Co. v. Sieracki, supra, at 103 (Stone, C. J., joined by Frankfurter and Burton, JJ., dissenting); Pope & Talbot, Inc. v. Hawn, supra, at 419 (Jackson, J., joined by Reed and Burton, JJ., dissenting); Alaska Steamship Co. v. Petterson, supra (Burton, J., joined by Frankfurter and Jackson, JJ., dissenting); Mitchell v. Trawler Racer, supra, at 550 (Frankfurter, J., joined by HARLAN and Whittaker, JJ., dissenting); Gutierrez v. Waterman S. S. Corp, supra, at 216 (HARLAN, J., dissenting); Waldron v. Moore-McCormack Lines, supra, at 729 (WHITE, J., joined by HARLAN, BRENNAN, and STEWART, JJ., dissenting).

See also G. Gilmore & C. Black, The Law of Admiralty 315-332 (1957); Tetreault, Seaman, Seaworthiness, and the Rights of Harbor Workers, 39 Cornell L. Q. 381.
[7] Seas Shipping Co. v. Sieracki, 328 U. S. 85.
[8] Crumady v. The J. H. Fisser, 358 U. S. 423; Mitchell v. Trawler Racer, 362 U. S. 539.
[9] Gutierrez v. Waterman S. S. Corp., 373 U. S. 206.
[10] E. g., the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688. The petitioner in the present case was fully covered, of course, by the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. § 901 et seq.
[11] E. g., maintenance and cure. See Calmar S. S. Corp. v. Taylor, 303 U. S. 525; Waterman S. S. Corp. v. Jones, 318 U. S. 724; Farrell v. United States, 336 U. S. 511; Warren v. United States, 340 U. S. 523.
[12] E. g., Seas Shipping Co. v. Sieracki, 328 U. S. 85, 94: "[T]he liability is neither limited by conceptions of negligence nor contractual in character."
[13] Mahnich v. Southern S. S. Co., 321 U. S. 96.
[14] Seas Shipping Co. v. Sieracki, 328 U. S. 85.
[15] Boudoin v. Lykes Bros. S. S. Co., 348 U. S. 336.
[16] Waldron v. Moore-McCormack Lines, 386 U. S. 724.
[17] A. & G. Stevedores v. Ellerman Lines, 369 U. S. 355; Gutierrez v. Waterman S. S. Corp., 373 U. S. 206.
[18] No member of the ship's crew was in any way involved in this case.
[19] The petitioner's reliance upon our summary per curiam reversal of a judgment for the shipowner in Mascuilli v. United States, 387 U. S. 237, is misplaced. There a longshoreman had been killed during a loading operation aboard a Government vessel when, under the strain of the opposing pull of two winches, a heavy shackle parted, recoiled, and struck him. The petition for certiorari posed three questions: (1) Did a prior unseaworthy condition come into play by the tightline condition? (2) Did the negligent handling of proper equipment by the longshoremen create a dangerous condition rendering the vessel unseaworthy? (3) Was the vessel unseaworthy because the longshoremen were not "equal in disposition and seamanship to the ordinary men in the calling," as was found in Boudoin v. Lykes Bros. S. S. Co., 348 U. S. 336?

Our per curiam reversal cited two cases: Mahnich v. Southern S. S. Co., 321 U. S. 96, and Crumady v. The J. H. Fisser, 358 U. S. 423. Mahnich involved a defective rope, Crumady a defective winch. It seems evident, therefore, that it was the first question posed by the petition for certiorari to which the Court gave an affirmative answer.
[*] The Second Circuit adopted the view that while one act of operational negligence would not make a vessel unseaworthy, unseaworthiness did result if the negligent act was incident to a continuous course of operation as where a wrong hatch cover was used, Grillea v. United States, 232 F. 2d 919, but not by an isolated act as where a boom was carrying a dangerous stress due to a negligent act. Puddu v. Royal Netherlands S. S. Co., 303 F. 2d 752. The difference in the two cases was stated as follows:

"A ship is not unseaworthy because it has glass in a window which might be broken. The injuries of a seaman who negligently breaks such a glass are not the result of unseaworthiness, nor are the injuries of a seaman who is cut by the falling glass. But injury incurred in stepping on the broken glass does result from unseaworthiness." Id., at 757.
The Second Circuit, however, refused to follow Grillea after our Mascuilli decision. Candiano v. Moore-McCormack Lines, 382 F. 2d 961; Alexander v. Bethlehem Steel Corp., 382 F. 2d 963; Cleary v. United States Lines Co., 411 F. 2d 1009; Tarabocchia v. Zim Israel Navigation Co., 417 F. 2d 476. The Fourth Circuit followed suit. Venable v. A/S Det Forenede Dampskibsselskab, 399 F. 2d 347; Lundy v. Isthmian Lines, 423 F. 2d 913.
Only the Fifth Circuit in the instant case and in Grigsby v. Coastal Marine Service, 412 F. 2d 1011, and the Ninth in Tim v. American President Lines, 409 F. 2d 385, stood against the rule of Mascuilli.