**Wilfred LaFLEUR**

v.

**M.S. MAULE, Her Tackle, etc., and Compania Sud-Americana de Vapores, Travelers Insurance Company, Intervenor.**

Civ. A. No. 15969.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

March 10, 1972.

David Painter, Lake Charles, La., for plaintiff.

Edmund E. Woodley, Holt & Woodley, Lake Charles, La., Terriberry, Carroll, Yancey & Farrell, M. D. Yager, New Orleans, La., for defendant.

HUNTER, District Judge:

Petitioner, a longshoreman employed by an independent stevedoring contractor, was injured while engaged with his fellow employees in loading cargo aboard the M/S MAULE. This action is for damages against the ship and its owner, alleging injuries caused by the ship's unseaworthiness. The case, to me, illustrates the accuracy of Mr. Justice Harlan's prophecy concerning *Usner*:

> Much as I would welcome a thoroughgoing re-examination of the past course of developments in the unseaworthiness doctrine, I fear that the Court's action today can only result in compounding the current difficulties of the lower courts with this area of the law. (Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 504, 91 S.Ct. 514, 520, 27 L.Ed.2d 562)

The Fifth Circuit in Robinson v. Showa Kaiun, 451 F.2d 688 (1971) emphasized the critical holding of *Usner* to be:

> "A vessel's condition of unseaworthiness might arise from any number of circumstances * * * What caused the petitioner's injuries in the present case, however, was not the condition of the ship, her appurtenances, her cargo or her crew, but *the isolated, personal* negligent act of the petitioner's fellow longshoreman." 400 U.S.

at 499, 91 S.Ct. at 517, 27 L.Ed.2d at 567.

Judge Goldberg, writing for the Court, proceeded to observe:

> "*Usner* distinguished 'instantaneous' unseaworthiness from what might be called 'connected' unseaworthiness. A longshoreman or one of his fellows might engage in a *congeries* of negligent acts that are of such a character or that continue for such a length of time that they become related to the status of the vessel. That *congeries* of acts might create a 'condition' of unseaworthiness, so that an individual act of negligence within or after the *congeries* might give rise to liability under the unseaworthiness doctrine. However, if the negligent act of a longshoreman is not part of any *congeries* of negligent acts connected to the status of the vessel or to its loading but is rather an isolated 'instantaneous' act of negligence within an otherwise seaworthy method of loading on an otherwise seaworthy vessel, then that one act of negligence by the longshoreman or his fellows will not render the vessel unseaworthy. * * * Although the distinction might seem simple to apply on paper, it is quite a difficult line to draw in practice."

*Usner* is another milestone in distinguishing between the "Sieracki-seaman" and a true seaman, and the result is that Sieracki-seamen are accorded a lesser status. If a fellow crew member were negligent the seaman wins under the Jones Act; not so with the longshoreman. (See this Court's discussion in Antoine v. Lake Charles Stevedores, Inc., 249 F.Supp. 290, W.D.La., 1965, aff'd 376 F.2d 443, 5th Cir., 1967). In *Usner* the Supreme Court emphasized the distinction with the following statement in concluding its opinion:

> "In [Mitchell v.] *Trawler Racer*, supra, [362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941,] there existed a condition of unseaworthiness, and we held it was error to require a finding of neg-

ligent conduct in order to hold the shipowner liable. The case before us presents the other side of the same coin. For it would be equally erroneous here, where no condition of unseaworthiness existed, to hold the shipowner liable for a third party's single and wholly unforeseeable act of negligence."

This is a suit claiming damages for a maritime injury sustained by the plaintiff, Wilfred LaFleur, on August 24, 1969, while he was in the employ of Lake Charles Stevedores, Inc. and engaged in loading the M/S MAULE, owned by defendant Compania Sud-Americana de Vapores.

We proceed to enter Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Mr. LaFleur was employed by Lake Charles Stevedores, Inc., as a longshoreman on August 24, 1969. He was assigned to stow bags of rice, weighing about 100 pounds each, aboard the M/S MAULE while she lay along side the docks at the Port of Lake Charles.

2. Mr. LaFleur, who is 39 years old, testified that his longshoreman experience was limited to five (5) months, resulting in total earnings of some $829.-00. Since the accident he has been employed as a policeman and garage mechanic.

3. The procedure utilized to load the rice was not complicated. The bags to be loaded were stacked on pallets and lowered into the hold on these pallets through cargo nets. The stowage operation itself was a standard, approved method in the industry, known as "backstocking." In utilizing this method, the men work in teams. One tier is laid, a team climbs on top of the first tier. The other team passes sacks to them. They take the sacks, and working from back to front, build another tier. Each tier here was five to six feet in height.

4. The foreman was not in the hold when plaintiff was injured. He had given no special instructions for the loading operation. He did not instruct the gang as to the manner in which the work was to be performed. Experienced longshoremen know how to accomplish this type of work and it is not necessary to give them specific instructions.

5. There were a number of workers in plaintiff's gang. The accident occurred at approximately 11:00 A.M. There were six men in the immediate area with plaintiff. His team partner was Landry. Two men handled a pack with two "other guys feeding the rice to us and then we two would stack." They had just finished flooring off and had backstacked two rows when plaintiff turned away from the stack to receive the cargo net and the bags which they had just stacked came tumbling down, and injured his knee.

6. There is no evidence that the shipowner had an unsafe plan of operation. The longshoremen went in the hold to stow the rice in the ordinary manner.

7. There were no ship crewmen present in the area of the accident at the time of its occurrence.

8. At the time of the accident the stowage was incomplete and the cargo was not ready for sea. All that plaintiff has proven is that the stack fell. Even assuming that negligence may be inferred from the falling of the stack, such negligence would not only be instantaneous with plaintiff's injury but it would also have to be attributed indistinguishably to the four longshoremen, including plaintiff himself, who had positioned the bags of rice.

9. Plaintiff attributes the fall of the bags to the use of slippery paper as a separation device to identify the cargo. Two rolls of separation paper had been furnished by the stevedores on the day of the accident. Paper is by far the most common type of separation device and is used about 90% of the time. It may well be that the use of nets or chalk or even tape would be preferable, but we do not believe that plaintiff has proven that the separation paper here used re-

sulted in this isolated fall of some sacks of rice.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter.

2. The shipowner warrants to longshoremen charged with the duty of loading cargo that the vessel and its gear will be reasonably fit for its intended use. The duty to provide a seaworthy vessel extends to the manner in which cargo is stowed.

3. The ship, its equipment, were in a seaworthy condition; the crew was fit and the method of loading adequate.

4. Negligence on the part of co-employees, if any, in adopting improper loading method cannot be attributed to the shipowner through the doctrine of respondeat superior. Neal v. Lykes Brothers S. S. Co. (5th Cir., 1962), 306 F.2d 313; Reed v. M/V Foylebank (5th Cir., 1969), 415 F.2d 838.

5. Plaintiff bears the burden of proving by a preponderance of the evidence that the shipowner was negligent or that the vessel was unseaworthy and that such negligence and/or unseaworthiness was a proximate cause of his injuries. The mere occurrence of an accident aboard ship does not render the vessel owner liable.

6. A vessel can be rendered unseaworthy by the negligence of a longshoreman or his fellow workers aboard the vessel, if such negligence consists of a "congeries" of negligent acts which precedes the accident by sufficient time to create a "condition" of unseaworthiness. However, if the act is not a part of a "congeries" of negligent acts connected to the status of the vessel, then such negligence will not render the vessel unseaworthy. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562; Robinson v. Showa Kauin, 451 F.2d 688 (5th Cir., 1971); Antoine v. Lake Charles Stevedores (5th Cir., 1967), 376 F.2d 443, cert. denied 389 U.S. 869, 88 S.Ct. 145, 19 L.Ed.2d 146.

7. Even if negligence should be inferred from the falling of the stack of rice bags, such negligence would not only be instantaneous and simultaneously with plaintiff's injury, but it would also have to be attributed indistinguishably to the longshoremen, including plaintiff himself, who were in the process of stacking.

## CONCLUSION

Plaintiff has failed to prove by a preponderance of the evidence that the shipowner was negligent or that the vessel was unseaworthy, and that such negligence and/or unseaworthiness was a proximate cause of his injuries. Any negligence inferred from the mere falling of the stack would be instantaneous negligence within the meaning of *Usner*. The result might have been different, had the bags fallen from a tier which had already been completely loaded or stacked.

Judgment for defendant.