**James B. FRANKLIN**

v.

**DORIC SHIPPING AND TRADING CORPORATION.**

**Civ. A. No. 15865.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Nov. 27, 1972.

was working on board the M/S EVAN-THIE in a gang whose walking foreman was Rufus B. Eagilen. The M/S EVANTHIE was in ship's berth #3 at the Port of Lake Charles. At about 9:00 A.M. while working with Austin Pete, the plaintiff received an injury to his left hand when it was caught between a pallet of rice, being loaded in the No. 1 forward hold of the vessel, and a dolly onto which the pallet was being lowered.

Earl Rose Robinson, Jr., another Stevedore employee, was the winch operator lowering the pallet of rice at the time in question. James Rollins was the flagman on deck. The rice-loading operation was under the direct supervision and control of the Lake Charles Stevedores.

The method of loading the rice into the hold onto a pallet and then placing the pallet on the dolly for purposes of stowing the rice into the bulkhead or wings of the vessel is an accepted, customary, usual and safe practice and procedure utilized in the Gulf Coast area, including the Port of Lake Charles.

The plaintiff's amended complaint alleges that the accident happened because of defective rollers on the dolly, and that the vessel failed to provide a safe procedure for loading the vessel. There is no genuine issue as to the material facts of the accident. The plaintiff has never identified the dolly that he claims was defective. Even if he did, the evidence does not establish a causal connection between a so-called defective dolly and the accident.

In this case the winch operator, Earl Rose Robinson, Jr., testified at the hearing on the defendant's motion for summary judgment that he received a signal from the flagman, Austin Pete. He stated he would always hold the load up about six inches to a foot until the flagman signaled him to bring it down. When Austin Pete told Robinson: "June, sit it down", sit it down means to lower the load onto the dolly. That is when the accident happened. Robinson

Payton R. Covington, Lake Charles, La., for plaintiff.

Holt & Woodley, Lake Charles, La., for defendant.

EDWIN F. HUNTER, Jr., District Judge:

On October 25, 1969 the plaintiff, James B. Franklin, a longshoreman, employed by Lake Charles Stevedores, Inc.,

was relying on Pete's signal. Robinson denies that a previous load had been brought into the hold and tilted the boards on which the dolly rested. The Court asked Robinson whether this was true and Robinson testified "It wasn't true", although he acknowledged that he could not see the pallet on top of the roller. Robinson's testimony clearly indicated that he followed the normal procedure to lower the load and stopped it before lowering it onto the dolly after he received the signal.

Austin Pete, the signalman, testified that he asked Franklin if it was all right to bring in the load and Franklin told him that it was. Pete stated that he had his back to Franklin, and that Franklin told him everything was alright, and it was at that time that Austin gave the signal for the load to be loaded onto the dolly.

The unquestioned fact is that Franklin was injured because of his and his co-employee's instantaneous act of negligence in handling this particular load of rice. It was not a congeries of things, but an isolated act of negligence.

There can be little doubt that the accident happened as a result of the instant act of negligence of someone who was employed by the Lake Charles Stevedores; either the plaintiff himself, the signalman, Austin Pete, or the winch operator, Earl Rose Robinson, Jr. There was nothing about the ship, its appurtenances, its loading plan, machinery, etc. that in any way caused or contributed to the accident. This is the classical operational negligence situation, and thus controlled by the rule established in Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562.

There have been a number of cases holding that where the accident took place at the time of the negligent act, there would be no liability attaching to the vessel owner. Antoine v. Lykes Brothers Steamship Co., Inc., 5 Cir., 376 F.2d 443, 1967, cert. den. 389 U.S. 869, 88 S.Ct. 145, 19 L.Ed.2d 146; Grigsby v. Coastal Marine Service of Texas, Inc., 412 F.2d 1011 (5th Cir., 1969), cert. dismissed, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531, 1969; Robichaux v. Kerr-McGee Oil Industries, Inc., 376 F.2d 447 (5th Cir., 1967); Reed v. M/V Foylebank, 415 F.2d 838 (5th Cir., 1969). In the Reed case one of the main issues was whether or not operational negligence, i. e., an improper loading plan, was synonymous with unseaworthiness. The Court said if it was then the defense of unseaworthiness would be abolished, and that any operational negligence would instantaneously render a vessel unseaworthy even though all the equipment and appurtenances aboard the ship were admittedly seaworthy. The Court made this comment:

"* * * This question is decided against appellant in this Circuit. Grigsby v. Coastal Marine Service of Texas, Inc. (supra, and cases cited therein)." at p. 840.

Further, in connection with the loading plan, the Court commented:

"Finally, appellant contends that the negligence of the stevedore in adopting an improper loading method should be attributed to the shipowner through the doctrine of respondeat superior. In Neal v. Lykes Bros. Steamship Company, 5 Cir. 1962, 306 F.2d 313, this Circuit held that 'a shipowner is not liable for the negligence of the longshoremen acting as servants or employees of an independent stevedoring contractor, unless such negligence creates an unseaworthy condition'. Since we concur in the trial court's finding of no unseaworthiness, there was no negligence on the part of Stevedore to impute to the shipowner and, thus, this contention must fail." At p. 840.

See also, Santiny v. Coastal Boat Operators, Inc., 438 F.2d 976 (5th Cir., 1971).

In the very recent case of LaFleur v. M. S. Maule, her tackle, etc. et al., 349 F.Supp. 1318, this Court held that the Usner rule applied in a situation where the plaintiff was seeking recovery from the ship because of a loading plan called

"backstacking". During such a loading operation, the stacked rice tumbled down injuring the plaintiff. This Court said:

"A vessel can be rendered unseaworthy by the negligence of a longshoreman or his fellow workers aboard the vessel, if such negligence consists of a 'congeries' of negligent acts which precedes the accident by sufficient time to create a 'condition' of unseaworthiness. However, if the act is not a part of a 'congeries' of negligent acts connected to the status of the vessel, then such negligence will not render the vessel unseaworthy. Usner v. Luckenbach, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562; Robinson v. Showa Kauin, 451 F.2d 688 (5th Cir., No. 29, 1971); Antoine v. Lake Charles Stevedores (5th Cir., 1967), 376 F.2d 443, cert. denied 389 U.S. 869, 88 S.Ct. 145, 19 L.Ed.2d 146."

In a per curiam opinion dated October 25, 1972 the Fifth Circuit Court of Appeals affirmed this Court's holding.

Unseaworthiness is a condition whereby a vessel or its equipment (or method) is not reasonably fit and if that condition exists at the time of the accident, and as a result a longshoreman is injured, the shipowner is liable, no matter how the condition was brought about or who brought it about. But if, as here, the previously perfectly satisfactory method is rendered unsafe because of the negligent act of plaintiff and/or his fellow employees, the act during its commission is referred to as "operational negligence." Here, it is clear that the accident was caused by personal negligence and these acts of negligence did not render unseaworthy an otherwise seaworthy vessel.

Judgment for defendant. Case dismissed.[1]

---

1. It is plaintiff's thesis that the use of a "short roller" rather than a "long roller" by the longshoremen constituted proximate unseaworthiness for which the ship is responsible. The theory is that the roller required precise centering of the pallet and that Franklin placed his hand under the load to center the roller and that this rather than the dropping of the pallet on his thumb was the proximate cause. The evidence taken on the motion for summary judgment does not reveal any support for the faulty bearing argument, and clearly reveals that under the umbrella of the reasoning stated in *Usner*, and the recent Fifth Circuit extension of that doctrine in *Robinson* and *LaFleur*, the sole proximate cause was classical operational negligence. Unseaworthiness, to furnish the foundation of an action for damages, must be a proximate cause of the injury; that is, there must be a causal connection between the alleged unseaworthy equipment and the injury. Where, as here, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the accident, then the second cause is regarded as the proximate cause, and the other remote.