473 F.2d 767
 Kenneth H. KELLOCH, Plaintiff-Appellee,
v.
S & H SUBWATER SALVAGE, INC., Defendant-Third Party
Plaintiff-Appellant-Appellee, Sharecroppers Boat Rental Inc,
et al., Defendants-Appellees-Appellants, State Automobile &
Casualty Underwriters, Inc., et al., Third Party
Defendants-Appellees-Appellants.
 No. 72-2935 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Feb. 5, 1973.
Rehearing Denied March 5, 1973.
 
 Lawrence K. Burleigh, Morgan City, La., for S & H Subwater Salvage, Inc.
 Donald M. Pierce, New Orleans, La., for State Auto.
 Richard L. Bodet, Metairie, La., for Appalachia.
 Rufus C. Harris, Jr., Ward R. Jones, New Orleans, La., for Sharecroppers.
 Michael X. St. Martin, Houma, La., for Kelloch.
 Before JOHN R. BROWN, Chief Judge, DYER and SIMPSON, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 The trial court awarded the plaintiff Kelloch substantial damages against his employer S & H Subwater Salvage and the owner of the M/V RAOUL J., Sharecroppers Boat Rental, in this suit under the Jones Act and General Maritime Law.[1] As between the tortfeasors, the court held that Sharecroppers is entitled to indemnification from S & H. Finally, the Court held that the third party defendants, S & H's insurers were liable under the terms of their policies to reimburse S & H. We affirm in all respects. F.R.Civ.P. 52(a).
 
 The Tender Tender
 
 2
 On the morning of September 25, 1970, seventeen-year-old Kenneth Kelloch was working in the employ of S & H Subwater Salvage as a tender for diver James Kober, aboard the M/V RAOUL J., in the Gulf of Mexico. The RAOUL J. had been chartered by S & H from Sharecroppers Boat Rental to be used in certain underwater diving and sand jetting operations.
 
 
 3
 One of the duties of a diver's tender was to prepare the diver for his dive. This included the fueling and operating of a diesel jet compressor which would pump the air to the diver on the floor of the Gulf. Kelloch and his co-worker spilled some of the diesel fuel on the compressor during the fueling operation. Some of this fuel ran off onto the deck. After the fueling operation was completed, Kelloch proceeded from the stern towards the bow to assist his diver in the descent. In spite of the fact that the vessel's deck had been painted with nonslip, walnut shell paint, Kelloch slipped on some diesel fuel causing permanent injury to his back.
 
 
 4
 There was also testimony in the record to indicate that some diesel fuel had spilled or leaked from the drums during the loading operation by the S & H diving crew. Carefully weighing the testimonies the trial Judge concluded that Kelloch was 30% at fault. Accordingly, he reduced Kelloch's damages by that amount.
 
 
 5
 On appeal the defendant strenuously contends that in light of the express finding of spillage by Kelloch that he should be found to be 100% negligent and denied recovery as a matter of law. In support of this contention they cite us to Keel v. Greenville Mid-Stream Service, Inc., 5 Cir., 1963, 321 F.2d 903. But Keel involved a case where the sole possible cause of the accident was a slippery deck from soap and water that only the plaintiff could have left there. In view of the facts that there was testimony to indicate an earlier spillage by the S & H diving crew and that the accident actually occurred approximately eight feet from the location where Kelloch spilled his diesel fuel, we cannot say that the trial Judge was clearly erroneous in affixing Kelloch's contributory negligence at only 30%. F.R.Civ.P. 52(a); Sicula Oceanica, S. A. v. Wilmar Marine Engineering and Sales Corporation, 5 Cir., 1969, 413 F.2d 1332, 1969 AMC 1597; Societa Anonima Navigazione Alta I. v. Oil Transport Co., 5 Cir., 1956, 1956 AMC 1073, 232 F.2d 422; Compania Anonima Venezolana De Nav. v. A. J. Perez Export Co., 5 Cir., 1962, 1962 AMC 1710, 303 F.2d 692; Cates v. United States, 5 Cir., 1971, 451 F.2d 411; Oil Screw Noah's Ark v. Bentley & Felton Corp., 5 Cir., 1963, 1964 AMC 59, 322 F.2d 3; Hart v. Blakemore, 5 Cir., 1969, 1969 AMC 2230, 410 F.2d 218.
 
 
 6
 Sharecroppers And Share What Else?
 
 
 7
 Sharecroppers does not want to share the responsibility for paying Kelloch's judgment. They are pleased that under the district court's judgment they are entitled to total indemnification from S & H. They are hopeful that this set of circumstances will continue. But, as good sailors should, Sharecroppers safeguard their position of repose with an anchor-to-windward.
 
 
 8
 The trial court held that the presence of slippery diesel fuel on the deck of the M/V RAOUL J. constituted a breach of Sharecroppers's non-delegable duty to provide a seaworthy vessel. Thrusting with the rapier and poignard of "transitory condition", Patterson v. Humble Oil & Refining Co., 5 Cir., 1970, 1970 AMC 550, 423 F.2d 883; West v. United States, 1959, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161, and "operational negligence", Usner v. Luckenbach Overseas Corp., 1971, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562, 1971 AMC 277, Sharecroppers insists that the trial Judge erred in declaring the RAOUL J., to be unseaworthy. Because we affirm the court's determination that Sharecroppers is entitled to total indemnification from S & H and her insurers, we pretermit our pary.
 
 
 9
 Although Sharecroppers's employee Captain Richard McAllister was unquestionably the master of the RAOUL J., the liability for unseaworthiness was predicated on non-feasance. The Jones Act liability of S & H, however, was founded upon the malfeasance of the S & H diving crew. The passively negligent torfeasor is clearly entitled to total indenmnity from the actively negligent party. Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 5 Cir., 1969, 1969 AMC 767, 410 F.2d 178.
 
 Whilst Diving
 
 10
 The final issue which remains for our determination concerns the right of S & H to reimbursement from its insurers.[2]
 
 
 11
 The insurance policies contained a standard Maritime B endorsement entitled "Amendments to Coverage B-Endorsement-Maritime".[3] Under the broad terms of this endorsement, the insurer would be obliged to reimburse the insured whenever someone in its employ was injured or killed as a result of accident or disease. If this endorsement presented the total record, the case would be simple. But two further conditions compound our construction of the policy.
 
 
 12
 First the Assured warranted that it would maintain P & I coverage on the masters and members of the crews of vessels in its service. As a part of this agreement, this warranty operated as an exception or exclusion of the Maritime B coverage.[4]
 
 
 13
 But there was an exception to the exception. The warranty did not apply-and, hence, neither did the exclusion-to accidents incurred "whilst diving". Because of their belief that the term "whilst diving" does not embrace the action of a diver's tender in preparing for diving-or, stated in the alternative, that the term only includes injuries sustained while the diver is in the water-the insurers declined to defend S & H in this action and disclaimed all liability.
 
 
 14
 Our research discloses no judicial construction of the term "whilst diving". After a careful consideration of the evidence on this point, the trial court concluded that "the term 'whilst diving' as included in the State policy includes the entire diving operation in and out of the water." One of the factors which the trial Judge considered important in making this determination was the fact that one of the major dangers of diving-certainly within the need and intent for insurance coverage-is the Caisson disease or bends. As the Court pointed out, this condition usually occurs after the diver has surfaced and is completely out of the water. Thus, putting the phrase "whilst diving" in the context of the hazards against which the insurance is sought, we conclude that the District Judge's construction of the phrase was eminently reasonable. It was certainly not "clearly erroneous". We thus affirm the holding that S & H is entitled to reimbursement according to the terms of the Maritime B endorsement for the sums which it is obliged to pay under this judgment to Sharecroppers or Kelloch.
 
 Attorneys' Fees
 
 15
 A final point remains for our consideration. The parties have briefed the question of whether attorneys' fees were within the ambit of the District Court's judgment. That judgment was silent on the point.
 
 
 16
 Essentially, the attorneys' fees fall into one of two categories: (i) those incurred by Sharecroppers in defense of the action, and (ii) those incurred by S & H. As to the first, the law is clear that attorneys' fees and costs are recoverable from the indemnitor under the terms of the judgment. See D/S Ove Skou v. Hebert, 5 Cir., 1966, 1966 AMC 2223, 365 F.2d 341, cert. denied sub nom., 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139; Lusich v. Bloomfield Steamship Co., 5 Cir., 1966, 1966 AMC 191, 355 F.2d 770; Diaz v. Western Ventures, Inc., S.D.Fla., 1971, 331 F.Supp. 1296. Thus, Sharecroppers is entitled to recover over against S & H for its attorneys' fees.
 
 
 17
 The S & H attorneys are entitled to be paid too. But here it is the insurers who must foot the bill. Under the terms of the policy, the insurers were obligated to come to the defense of S & H. Having declined to defend (perhaps under the customary reservation of rights agreement), the insurance companies now have no claim for relief. In consequence of the insurers' breach of their duty to defend, the assured was forced to retain counsel at its own expense. This expense is then a proper element of the measure of damages for the breach. See American Home Assurance Co. v. Czarniecki, 1969, 255 La. 251, 230 So.2d 253; Fontenot v. State Farm Mutual Insurance Co., La.App., 1960, 119 So.2d 588; Bandy v. Avondale Shipyards, Inc., 5 Cir., 1972, 458 F.2d 900, 902.
 
 
 18
 The judgment is modified to allow the recovery of attorneys' fees as outlined in this opinion. But yet another matter arises in this regard. In Patterson v. Humble Oil & Refining Co., 5 Cir., 1970, 1970 AMC 550, 423 F.2d 883, 886, we held that a policy of insurance did not cover a contractor against whom attorneys' fees and costs were assessed in an unsuccessful damage suit by an employee of the contractor against the owner of a ship on which he was working and in which the contractor was impleaded for indemnification for the amounts he was required to pay the shipowner's attorneys. On the present record we are unable to ascertain what effect Patterson should have in the case at bar. Accordingly, we remand for a determination by the District Court of the limited issue presented by Patterson, to wit: may S & H recover from its insurers the amounts which it must expend according to the terms of this judgment for the payment of Sharecroppers' attorneys? In all other respects, the judgment, as modified herein, is affirmed.
 
 
 19
 Remanded.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I
 
 
 [1]
 The Judge determined Kelloch's damages for personal injury under the Jones Act to be in the amount of $80,000. Because of the plaintiff's contributory negligence in the amount of 30%, however, the Judge reduced the judgment to the amount of $56,000. He also awarded $3,704 for pastdue maintenance plus all unpaid cure (bearing interest at the rate of 7% from the date of judicial demand)
 
 
 [2]
 There are several policies of insurance with several different underwriters. Together they provide S & H with an aggregate coverage of $100,000 for a single injury occurring in any one accident. Since the policy provisions on all are the same, we deal primarily with the liability of the primary carrier, State Automobile and Casualty Underwriters, Inc. The other insurers are similarly bound by our determination
 
 
 [3]
 The Maritime B endorsement provides as follows:
 "It is agreed that such insurance as is afforded by the policy under coverage B with respect to bodily injury by accident or disease including death at any time resulting therefrom, sustained by a master or a member of the crew of any vessel is subject to the following provisions:
 "Coverage B-Employers' Liability" is amended to read as follows:
 Coverage B-Employers' Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto."
 
 
 [4]
 The warranty and exclusion are as follows:
 "The assured warrants, and it is a condition of this insurance, that all vessels owned or chartered by the insured will be insured separately for Protection and Indemnity insurance, including the assured's liability to Masters and Members of the crews of such vessels, and coverage provided by this policy under Endorsement 'Amendments to Coverage B Endorsement Maritime' shall not apply to the assured's liability to Masters and Members of the crew of any vessels which are owned or chartered by the insured.
 EXCEPTION:
 This limitation and exclusion shall not apply to:
 (A) Claims for injury to or death of employees of the named insured only if such injury or death would otherwise be covered by this policy and occurs whilst diving."