**Felipe VIRGONA, Plaintiff,**

v.

**FARRELL LINES INCORPORATED, Defendant and Third-Party Plaintiff,**

v.

**UNIVERSAL TERMINAL & STEVE-DORING CORP., Third-Party Defendant.**

**No. 71 Civ. 3930.**

United States District Court,
S. D. New York.

Nov. 21, 1973.

Paul A. Gritz, Brooklyn, N. Y., for plaintiff; Edward D. Lory, Brooklyn, N. Y., of counsel.

Lilly, Sullivan & Purcell, New York City, for Farrell Lines, Inc.; George W. Sullivan, New York City, of counsel.

Commette, Quencer & Annunziato, New York City, for Universal; Albert S. Commette, New York City, of counsel.

## OPINION

BONSAL, District Judge.

Plaintiff, Felipe Virgona, a longshoreman employed by Universal Terminal & Stevedoring Corporation ("Universal")[1] instituted this action to recover damages for injuries he claims he sustained as a result of an accident on March 14, 1969, while aboard the S.S. AUSTRALIAN GULF, a vessel owned and operated by defendant Farrell Lines, Incorporated ("Farrell Lines").[2] Jurisdiction is asserted under 28 U.S.C. § 1333.

Universal has been impleaded as a third-party defendant. Following the trial, the third-party complaint was withdrawn, so that the only issue before the court is the liability of the defendant Farrell Lines.

The case was tried to the court without a jury, and the parties stipulated that on the day of the accident the vessel was moored at Pier No. 5 in Brooklyn and that Universal was loading cargo consisting of 55-gallon steel drums, each weighing approximately 395 pounds. The drums were loaded in drafts, each containing six drums, by means of chine or drum hooks.

The plaintiff was working as a holdman in the No. 4 offshore deep tank, and his job, with the other holdmen, was to remove the drums from the drafts and to position them in the wings. Eight drafts had been lowered without incident when shortly after 10:00 a. m., while the ninth draft was being lowered, a drum fell out of the draft, landed on the floor of the deep tank, and ricocheted, striking the plaintiff, who was standing in the wings, and causing his injuries.

Since no evidence of negligence on the part of the officers and crew of the vessel was brought out during the trial, the court dismissed the allegations of negligence and reserved on the issue of seaworthiness.

Plaintiff contends that the accident was caused by the transitory unseaworthiness of the vessel, while defendant contends that the accident was caused by the negligence of plaintiff's fellow employees either in improperly loading the

---

1. Universal is a New York corporation with its principal place of business in the city, county, and state of New York.

2. Farrell Lines is a New York corporation with its principal place of business in the city, county, and state of New York.

---

**715**

draft or in allowing the draft to contact some part of the vessel while it was being lowered, dislodging one of the drums.

While there was testimony that one or two of the chine hooks were bent, the photographs taken after the accident do not support this testimony. Nor was there any evidence that the draft had been improperly put together. There was no evidence that the manner of loading or the equipment used in any way rendered the vessel unseaworthy, and there was also no evidence that the officers and crew of the vessel had any knowledge or reason to believe that any unseaworthy condition existed. See Slan v. A/S Det Danske-Franske D/S, 479 F.2d 288 (5th Cir. 1973).

While some of the plaintiff's fellow longshoremen testified that the drum fell from the level of the main deck—which would have meant a fall of some 40 or 45 feet—to the floor of the deep tank, there was other testimony, corroborated by photographs, that the drum was not broken and suffered only slight damage around its rim, which makes it highly unlikely that it fell from the main deck. There was also testimony by some of plaintiff's fellow longshoremen that they did not observe the draft contact any part of the vessel before the drum fell. However, their observations were too limited to make their testimony credible.[3]

The most plausible explanation of the accident is that during the lowering of the draft, it came into contact with some part of the vessel—perhaps the coaming of the deep tank or the tunnel casing in the deep tank—and that this contact dislodged one of the drums, which fell to the floor of the tank, a distance of approximately eight to twelve feet, ricocheted into the wing, and struck the plaintiff. On this hypothesis, the fault would be that of the winchman, who may have permitted the draft to swing, or that of the gangwayman, who may not have been paying attention, each of whom was an employee of the stevedore.

Under Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), this would have been sufficient to render the vessel unseaworthy and entitle the plaintiff to recovery. However, defendant contends that under Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971), where no other condition of unseaworthiness exists, the shipowner is not liable for a longshoreman's "single and wholly unforeseeable act of negligence." 400 U.S. at 500, 91 S.Ct. at 518. In effect, *Usner* says that even if the vessel was unseaworthy, the shipowner is not liable if the unseaworthiness was occasioned by a single act of negligence on the part of a longshoreman.

In *Usner*, the winchman lowered the fall too far and too fast, so that it hit the plaintiff. Here, at some point by reason of the negligence of the winchman or the gangwayman, the draft came into contact with some part of the vessel, the drum was dislodged, fell to the floor of the deep tank, and ricocheted, striking the plaintiff. It was perhaps this kind of distinction that the late Justice Harlan had in mind in his dissent in *Usner* where he pointed out that that decision could only result in compounding the current difficulties of the lower courts with this area of the law. 400 U.S. at 504, 91 S.Ct. 514.

Perhaps the majority in *Usner* had in mind that longshoremen are protected by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., which provides compensation for injuries sustained in the course of their employment, while seamen are left to their rights under the Jones Act. (46 U.S.C. § 688). Longshoremen are entitled to compensation whether the acci-

3. The plaintiff and another witness were standing in the wing of the deep tank and could not see up through the square of the hatch; the hatch boss testified he was standing on the main deck, while other testimony had him on the dock; and the gangwayman who was on the main deck, may well have been negligent.

dent occurs on board the vessel or on the dock. It does appear illogical to provide an additional claim against the vessel where the accident was due to an isolated act of negligence by a fellow longshoreman, and there is no evidence of negligence on the part of the crew, and there is nothing the matter with the vessel, its gear and appurtenances.

In the many cases decided since Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), the courts have held that a longshoreman is entitled to a reasonably safe place to work, and if this is denied him by reason of the unseaworthiness of the vessel, he is entitled to recover. However, where there is a single act of longshoreman negligence, this concept would appear to have been modified by Usner;

certainly the plaintiff in *Usner* did not have a reasonably safe place to work at the time the fall was dropped on him.

Applying *Usner* to the facts of this case, it seems clear that even if the plaintiff's accident was caused by the transitory unseaworthiness of the vessel, it was occasioned by the single act of negligence of one of his fellow longshoremen, and, for that reason, plaintiff cannot recover.[4] See Robinson v. M/V Merc Trader, 477 F.2d 1331 (5th Cir. 1973); Tarabocchia v. Zim Israel Navigation Co., 446 F.2d 1375 (2d Cir. 1971).

The foregoing constitutes the Court's findings of fact and conclusions of law. F.R.Civ.P. 52(a).

Settle judgment on notice.

---

4. In view of the foregoing disposition, it is not necessary to reach the issue of damages. However, the court took evidence on plaintiff's damages and is prepared to make findings of fact in the event an appellate court should determine that there was liability.

The plaintiff was taken to the hospital following his accident, where he remained from March 14 to April 18, 1969. Following his release, he was under the care of a number of doctors, and the parties have stipulated that his medical and hospital expenses were in the amount of $5,901.09. Plaintiff suffered a blow to his chest, resulting in fractures to certain bones, which healed without permanent residual effects. He also had blood in his pleural cavity, which led to a thickening of the pleura and the development of fibrous scar tissue in his left chest. This has resulted in a mild to moderate impairment of the function of his left lung, which condition is considered to be permanent and would require plaintiff to take rest periods during physical exertion. There was also testimony that plaintiff suffered from bladder and urinary problems, but the court finds that these problems were not causally related to or aggravated by plaintiff's accident. Plaintiff also complained of continuing pain, but there were no objective findings to support this, and it may be that such pain is due to an anxiety reflex by reason of his injury.

The evidence indicates that the plaintiff lost earnings from March 14, 1969 to June 12, 1970, the date on which the court finds the plaintiff was capable of returning to

work, in the amount of $11,184.15, from which must be deducted payments made to the plaintiff from the Guaranteed Annual Income Fund in the amount of $12,668.00. See Carrozza v. Moore McCormack Lines, Inc., 69 Civ. 3762 (S.D.N.Y., opinion filed July 6, 1973) (Levet, J.); De Paulis v. United States, 193 F.Supp. 7 (E.D.N.Y. 1961). Therefore, the court finds that he is not entitled to damages for past lost earnings. As to future lost earnings, the evidence indicates that plaintiff has not sought employment, though there is nothing about his condition to preclude him from taking employment, including employment involving manual labor. Accordingly, the plaintiff is not entitled to damages for future lost earnings.

As to pain and suffering, the plaintiff doubtless suffered pain immediately following the accident and during the period of treatment at the hospital and while under the care of the various doctors who treated him thereafter. While he still complains of pain, no objective findings were made to support this claim. Plaintiff was 46 years of age at the time of his accident, and adding a life expectancy at that time of 26 years, in the court's view a fair award for plaintiff's pain and suffering is $10,000.

Summarizing, if plaintiff would be entitled to recover damages for his accident, the court finds that he would be entitled to recover medical and hospital expenses in the amount of $5,901.09; pain and suffering, $10,000.00; total, $15,901.09.