Fannie **SMITH**, Admx., Plaintiff,

v.

**OLSEN & UGELSTAD**, Defendant.

**OLSEN & UGELSTAD**, Plaintiff,

v.

**DETROIT HARBOR TERMINALS, INC.,** Defendant.

Civ. A. Nos. 32042, 32126.

United States District Court, E. D. Michigan, S. D.

Feb. 24, 1971.

(d) since petitioner was convicted and sentenced in Philadelphia County.

Samuel Posner, Posner & Posner, Detroit, Mich., for plaintiff Fannie Smith.

John L. Foster of Foster, Meadows & Ballard, Detroit, Mich., for defendant and third party plaintiff Olsen & Ugelstad.

Earl Remer, Detroit, Mich., for third party defendant Detroit Harbor Terminals, Inc.

### OPINION

TALBOT SMITH, District Judge.

Civil Action #32042 is a civil action brought by Fannie Smith, Administratrix of the Estate of Joseph Smith, against Olsen & Ugelstad, owners of a ship, the M/V MAKEFJELL. Mr. Smith was crushed by a falling crate in the hold of that vessel during its unloading by the Detroit Harbor Terminals, Inc., decedent's employer, on October 14, 1968.

Civil Action #32126 is a suit by the shipowner, Olsen & Ugelstad, to recover indemnity for any sum adjudged due the Administratrix in Civil Action #32042 and for the expenses of defense.

The cases were consolidated for trial and were tried before the Court on September 24, 25, and 29th, 1970. The parties were ordered to file proposed findings of fact and conclusions of law. Proposed findings and conclusions were filed by Olsen & Ugelstad, defendant in Civil Action #32042 and plaintiff in Civil Action #32126 on October 2, 1970.

No other proposed findings and conclusions or objections to those already filed have been received, despite informal extensions of time.

## FINDINGS OF FACT

Plaintiff Fannie Smith is a Michigan citizen who is the Administratrix of the Estate of Joseph Smith, Deceased, now pending in Wayne County Probate Court, Wayne County, Michigan.

Defendant in #32042 and Plaintiff in #32126, Olsen & Ugelstad, is a Norwegian business entity which was at all pertinent times the owner and operator of the M/V MAKEFJELL, a general cargo vessel of Norwegian registry, containing five holds, engaged in commerce and navigation upon the high seas and the Great Lakes.

Defendant Detroit Harbor Terminals, Inc., is a Michigan corporation with its office and principal place of business in Detroit and was at all pertinent times engaged in stevedoring at its dock and warehouse facility on the Detroit River.

Jurisdiction is founded upon the commission of a maritime tort upon navigable waters of the United States.

The accident occurred when the decedent, Mr. Smith, as a member of a longshoreman gang employed by Detroit Harbor Terminals, Inc., was crushed to death by a falling crate containing glass.

The glass had been stowed by stevedores in Hamburg and had survived the ocean crossing and seaway voyage without shifting. Each crate weighed in excess of one ton and was constructed of new, rough hewn wood and each crate had three 4″ skids permanently affixed to facilitate loading, stowage and discharge by the use of hilos or fork lift trucks.

The crates were stowed in the forward end of the hold, both port and starboard, four tiers high except near the scuttle hatches where only three high stowage permitted entrance to the hold for checking the cargo during the voyage.

Immediately prior to the accident, most of the crates of glass had been removed from the hold and there remained only a single line of crates stowed flush against the forward bulkhead and extending from the center of the vessel to the starboard shipside. The remaining crates varied somewhat in size. Two of the crates, including the fatal crate, were 2′ 5″ wide, 3′ 5″ long and 3′ 6″ high, slightly smaller than the others. Immediately against the side of the ship, crates of similar dimensions were stowed four tiers high. These presented a smooth and even stow. However, inward from the shipside and in the fourth or highest tier were stowed the two smaller crates on top of a column of the wider crates with the result that the two smaller crates overlapped the wider crate and were unsupported at their outer edges. No dunnage was employed since while all the crates were in stow they were quite secure. It was only after some of the lower crates had been removed that the fatal crate became insecure.

One of the wider crates was set immediately to port of the fatal lift in the fourth tier. This crate was lifted down by the hilo operator and set in the starboard forward corner of the hold, out of the way, while the operator returned and picked up two of the wider crates which were partly supporting the fatal lift. The stow of the fatal crate was such that its entire skid on the side nearest the center of the ship was unsupported when the two crates were removed. Probably the fatal crate was jostled when the operator lifted the two crates out of stow. However, the fatal crate did not fall at this time. The operator took the two crates to the center of the hold and set them down, all of the longshoremen except the deceased following along with the fork lift truck.

The deceased remained in the area where the two crates had been removed and picked up an empty cigar box lying loose in the hold and then proceeded to the point where the two crates had been removed and placed his hand on the last remaining crate of the column which had partly supported the fatal crate and attempted to look behind the remainder of

the crates, apparently in hopes of finding some cigars or other article left in the hold from a previous voyage. At that time the fatal crate descended and crushed his head against the remaining crate upon which he had placed his hand to steady himself as he leaned over.

The Court estimates that the fatal crate was precariously balanced some thirty seconds, the time necessary for the hilo to back away from the stow with its load of two crates and set them down in the center of the hold.

The fatal crate was largely supported in the original stow by a column of crates which were not touched by the hilo prior to the accident. The fatal crate overhung the two crates which were removed to the center of the hold by only about 5", which is to say only a little more than the width of its skid nearest the center of the ship. We do not know how much the fatal crate was jarred out of position by the removal of the two crates partly supporting it, but even if it were not jarred out of position at all, still it would have then been supported by only two of its skids with one skid completely unsupported and hence would have been in a precarious position.

The fatal crate weighed about one ton. It is not clear why it did not fall immediately after the removal of the two crates if it were going to fall at all but perhaps the movement of the hilo about the deck or the setting down of the two crates caused slight vibration sufficient to loosen it from its precarious position. The deceased did not touch the fatal crate or attempt to move any of the others except to rest his hand on one of the crates on the deck. It seems unlikely that his movements could have caused the fatal crate to fall.

Our necessary conclusion is that if the crates had been removed from the stow in proper order, top crate first, as the commonest prudence required, this tragic accident would never, could never, have occurred.

Safety and Health Regulations for Longshoring required:

(a) When necessary, cargo shall be secured or blocked to prevent its shifting or falling.

(b) In breaking down, precautions shall be taken, when necessary, to prevent the remaining cargo from falling. 29 CFR § 1504.83.

The record is barren of any testimony as to efforts of the longshoremen to prevent the crate from falling.

No ship's equipment or crew were involved in the discharge although one seaman, Francis Joseph, was in the hold watching for pilferage or breakage.

The decedent, Joseph Smith, was born in Detroit on November 18, 1933; had a high school education; was married to Fannie Smith on September 20, 1959 and had been employed by Detroit Harbor Terminals, Inc. as a longshoreman in the shipping season since May, 1967.

During 1968, up to the time of his death, Joseph Smith earned approximately $3,700.00 as a longshoreman. However, at the time of his death he was separated from Fannie Smith and was living with another family to whom he gave all his earnings and was not contributing to the support of Fannie Smith nor had he contributed to her support for several years preceding his death. No children were born of that marriage.

Death was instantaneous.

The Shipowner has proved about $1,000.00 expended for the testimony of the witness Joseph who attended the trial from Oslo, but the Court reserves its ruling regarding expenses pending proof of attorney fees and other costs or stipulation of counsel.

## CONCLUSIONS OF LAW

The Court has jurisdiction of the subject matter and the parties in both suits. Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).

■ No shipowner negligence appears, and the Court finds that the vessel and her cargo were seaworthy in all respects.

The cause of the accident was the negligence of the longshoremen in taking down the crates in improper order coupled with the contributory fault of the deceased in being in a place of danger bent on personal gain and without attention for his own safety. The contributory negligence of the deceased is set at 35%.

The death case (Civil Action 32042) is governed by references to, but not by, the Death on the High Seas Act. Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

The indemnity case (Civil Action 32126) is governed by Ryan Stevedoring v. Pan-Atlantic Steamship, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its progeny.

The Longshoring Regulations have the force and effect of law and were plainly breached. Manning v. M/V "Sea Road", 417 F.2d 603 (5th Cir. 1969).

The shipowner is not liable in Civil Action #32042 because of the total absence of negligence of unseaworthiness. It is now clear that instant unseaworthiness resulting from the operational negligence of the stevedoring contractor or his servants is not a basis for recovery by an injured longshoreman. Usner v. Luckenbach Overseas Corporation et al., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1970).

No damages are proved in the first case (#32042) because the death was instantaneous and no loss of consortium exists in law, Igneri v. Cie. de Transports Oceaniques, 323 F.2d 257 (2d Cir. 1963) or on the facts; and plaintiff has lost no reasonably expected contribution, Petition of Risdal & Anderson, Inc., 291 F.Supp. 353 (D.C.Mass.1968).

The negligence of the deceased, as well as that of the other longshoremen, is a breach of the warranty of workmanlike service owed by the stevedore, Detroit Harbor Terminals, Inc., to the shipowner, Olsen & Ugelstad. Hart-

nett v. Reiss Steamship Co., 421 F.2d 1011 (2d Cir. 1970).

The shipowner is entitled to the reasonable expense incurred in defending the first suit. Strachan Shipping Co. v. Koninklyke Nederlandsche S.M., N.V., 324 F.2d 746 (5th Cir. 1963).

Appropriate orders shall be submitted in ten days.

It is so ordered.