**Michael J. RYAN, Plaintiff-Appellee,**

v.

**PACIFIC COAST SHIPPING CO., LIBERIA, Defendant-Appellant.**

No. 73–2742.

United States Court of Appeals, Ninth Circuit.

Jan. 2, 1975.

Kenneth E. Roberts (argued), Souther, Spaulding, Insey, Williamson & Schwabe, Portland, Or., for defendant-appellant.

Raymond J. Conboy (argued), Portland, Or., for plaintiff-appellee.

Before LUMBARD,[*] KOELSCH and WRIGHT, Circuit Judges.

## OPINION

LUMBARD, Circuit Judge:

Defendant Pacific Coast Shipping Co. (Pacific Coast), a shipowner, appeals from a judgment entered May 23, 1973, in the District Court of Oregon, Robert C. Belloni, J., awarding plaintiff Michael J. Ryan (Ryan), a longshoreman, damages for personal injuries in an amount of $53,129.05 plus costs and interest. The judgment awarded Pacific Coast damages in the amount of its liability to Ryan, plus its costs and interest, from Scrap Loaders, Inc., Ryan's employer. Scrap Loaders does not appeal.

The judgment of the trial court was virtually identical to the first judgment which it entered in this case on June 6, 1969. That earlier judgment was affirmed by this court on September 8, 1971. 448 F.2d 525 (1971).[1] However, on January 17, 1972, the Supreme Court vacated our judgment, 404 U.S. 1035, 92 S.Ct. 713, 30 L.Ed.2d 727 and the case was remanded to us for reconsideration in light of Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1970), and Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). We in turn remanded the case to the district court for reconsideration in light of Victory Carriers on August 25, 1972. The district court reviewed its decision in light of both Usner and Victory Carriers and concluded that its initial decision was correct. We disagree and reverse on the basis of Usner.[2]

On January 25, 1966, Ryan was employed as a longshoreman by Scrap Loaders, Inc., and was engaged in dis-

---

[*] The Honorable J. Edward Lumbard, United States Circuit Judge, Second Circuit, sitting by designation.

1. Scrap Loaders joined in the appeal of that first decision on the ground that it should not be held liable since Oregon had an exclusive liability provision in its Workmen's Compen-

sation law. We followed the weight of authority on that issue and rejected Scrap Loaders' contention.

2. Since we feel that Usner requires reversal of the district court's decision, we need not consider whether Victory Carriers also mandates reversal.

charging a cargo of steel pipe from the S. S. Popeye, a ship owned by Pacific Coast and berthed in navigable waters at Portland, Oregon. A dockside crane was used to unload the ship. The unloading procedure was as follows: the crane operator would lift the steel pipes out of the ship's hold in bundles weighing between four and six tons. He would then swing them over the dock and deposit them in a railroad car on the dock. Ryan, who was working as a slingman, would unhook the bundles after they had been placed in the car. When it had been necessary to straighten the pipes so that they would fit into the railroad car, the crane operators for the six shifts prior to the accident had first straightened them on the deck of the Popeye before depositing them in a railroad car.

The accident occurred when a new crane operator, Vic Bono, discharging his first bundle of pipes, either accidentally or in an attempt to straighten the bundle, swung it so that it hit the side of the railroad car into which it was to be loaded. That caused the railroad car to tip and pin Ryan between that car and an adjacent car.

The issue is whether the district court was correct in concluding that Ryan's injury was caused by some condition that rendered the Popeye unseaworthy rather than by an individual act of negligence. Our answer is dictated by Usner v. Luckenbach Overseas Corp., supra,[3] where the Supreme Court held that an unseaworthy condition was not created when a winch operator lowered a cargo sling attached to his winch too fast and thereby caused injury to a longshoreman engaged in unloading the ship.[4] The Supreme Court described the underlying facts in Usner as follows:

> [P]etitioner and others were on the barge, where their job was to "break out" the bundles of cargo by securing them to a sling attached to the fall

each time it was lowered from the ship's boom by the winch operator. The loading operations had been proceeding in this manner for some time, until upon one occasion the winch operator did not lower the fall far enough. Finding the sling beyond his reach, the petitioner mentioned to the flagman standing on the deck of the ship to direct the winch operator to lower the fall farther. The winch operator then lowered the fall, but he lowered it too far and too fast. The sling struck the petitioner, knocking him to the deck of the barge and causing his injuries. Neither before nor after this occurrence was any difficulty experienced with the winch

Usner v. Luckenbach Overseas Corp., supra, at 495, 91 S.Ct. at 515.

This case is quite similar to Usner. The unloading operation had proceeded without incident for some time. The action that caused Ryan's injury—the striking of the railroad car by the crane operator—had not occurred before and did not occur again. In the words of Usner, "[w]hat caused [Ryan's] injuries in the present case, however, was not the condition of the ship, her appurtenances, her cargo, or her crew, but the isolated, personal negligent act of petitioner's fellow longshoreman. To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions." Usner v. Luckenbach Overseas Corp., supra, at 500, 91 S.Ct. at 518.

The district court apparently felt that Bono intended to bang the pipes against the car in order to straighten them. It attempted to distinguish Usner by characterizing the issue as the "propriety of an unloading technique." We agree that a vessel can be rendered unseaworthy if

---

**3.** Although the Supreme Court directed us to reconsider our decision in light of Usner, virtually all of the cases cited by Ryan predate that decision and thus are of little help.

**4.** Although Usner was decided prior to our first opinion in this case, and was cited in

that opinion, the remand of the case by the Supreme Court for reconsideration in light of Usner suggests that we did not adequately consider the effect of Usner on this case at that time.

an unsafe method of discharging cargo is adopted by the longshoremen. Blassingill v. Waterman S. S. Corp., 336 F.2d 367 (9th Cir. 1964). However, no such unsafe method had been adopted here. For six shifts prior to the accident a proper technique had been used. The actions of Bono in discharging his first load cannot be characterized as the adoption of a new unloading technique.[5] Indeed, the term "unloading technique" seems singularly inappropriate. Ryan, who had worked on the docks for over 20 years, testified at trial that he had never seen anyone do this before. Indeed, no other witness stated that he had seen a crane operator intentionally do what Bono did here. We conclude that Ryan's injury was the result of an isolated act of negligence by Bono, and not the result of an unloading technique somehow invented by Bono simultaneously with the accident.[6]

To convert this single negligent act into an unseaworthy condition is to play a game with words. This we decline to do. Virtually any such act could be described as an adoption by the person committing the act of an unsafe practice. For example, in *Usner* the Supreme Court could well have said that the winch operator adopted the practice of lowering the fall "too fast." However, it clearly rejected such an approach. Here the Court's reasoning impels us to conclude that this one-time occurrence—the banging of steel pipes against a railroad car—did not give rise to an unseaworthy condition.[7]

As a matter of policy our decision seems appropriate. In 1972, Congress amended the Longshoremen's and Harbor Workers' Compensation Act to eliminate unseaworthiness claims such as Ryan makes here. 33 U.S.C. § 905(b) (Supp. II 1972). In addition, while we have thought it unnecessary to consider, and do not rely on *Victory Carriers* for our decision, we note that our decision implements the policy enunciated there of discouraging the expansion of admiralty suits where such claims tend to circumvent a state's statutory provisions for compensating injured workmen. *Victory Carriers, Inc. v. Law*, supra, at 211–212, 215–216, 92 S.Ct. 418.

Reversed.

KOELSCH, Circuit Judge (dissenting):

The trial judge, as the majority recognizes, was well aware of the nice distinction between operational negligence and unseaworthiness. That being true, I share the view of the Second Circuit in *Radovich v. Cunard Steamship Co.*, 364 F.2d 149, 152 (2d Cir. 1966), that

"If anything emerges from these cases other than the difficulty of applying the act-condition (or operational negligence-unseaworthiness) dichotomy, it is that the findings of the trier of fact should be left undisturbed, if the law to be applied to the facts is properly understood."

---

**5.** Crucial to the district court's position was its finding that "the procedure employed would have been, in all likelihood, repeated if not for the injury to Ryan." But that is sheer speculation. Bono did not testify at trial, and there is nothing in the record to support the court's statement.

**6.** The very words "unseaworthy condition" suggest that there must be some period of time during which the condition exists. For example, in cases involving injuries sustained by a longshoreman when part of a ship's cargo has fallen on him, courts have generally refused to allow recovery if the accident occurred soon after the cargo was stowed. They have concluded that a condition of unseaworthiness must consist of more than one act and last longer than a few seconds or minutes. Caparro v. Koninklijke Neder-

landsche Stoomboot Maatschappij, N.V., 503 F.2d 1053, 1054 (2d Cir. 1974) (per curiam); La Fleur v. M. S. Maule, 349 F.Supp. 1318 (W.D.La.1972); Smith v. Olsen & Ugelstad, 324 F.Supp. 578 (D.Mich.1971), affd., 459 F.2d 915 (6th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 526, 34 L.Ed.2d 490 (1972). By analogy these cases suggest that no unseaworthy condition was created here since Ryan's injury was the immediate consequence of the questioned act of the crane operator.

**7.** We also reject Ryan's argument that the vessel was unseaworthy because no taglines or pike poles were provided. They would not have prevented the accident and they were unnecessary since loads could be and usually were first straightened on the deck of the Popeye.

It is well to note that the evidence in this record was essentially uncontradicted and that the crucial findings of fact, now rejected by the majority, concern motive and intent—matters of a kind which sometime elude easy perception in cold records, which generally tend to lack flavor.

Given the undisputed fact that "lengths of pipe must be straightened before they can be loaded in the cars," does it necessarily follow that all operators act alike in aligning their loads. Or is it inconceivable because no operator during the six prior shifts had performed the operation by slamming his load against the gondola car, and that no one had previously observed this done, that Bono's act was not "conscious and intended," as the court found. Or can we unhesitatingly say that the fact-finder was nonetheless mistaken when he further found that "The procedure employed would have been, in all likelihood, repeated if not for the injury to Ryan." I am firmly convinced the answer is "No."

Because the majority does not reach appellant's second assignment, I will not discuss it, but merely make the passing comment that it, too, lacks merit.