William J. ANDERSON, Plaintiff,

v.

PITTSBURGH & LAKE ERIE RAILROAD COMPANY, Defendant.

Civ. A. No. 60–642.

United States District Court
W. D. Pennsylvania.

Aug. 29, 1962.

T. C. Jones, Jr., McKeesport, Pa., for plaintiff.

Gordon E. Neuenschwander, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

Following the trial of this case in which the jury brought a verdict of $22,500 for the plaintiff, motions followed for judgment N.O.V., or in the alternative for a new trial because of the excessiveness of the verdict. The action was under the Federal Employers' Liability Act brought by an employee of the defendant railroad.

On February 18, 1960, the plaintiff was employed by the McKees Rocks shop of the defendant as an apprentice carman. While engaged together with two other fellow employees, under the instruction of a foreman, he was required to reset the wheels of the westerly truck portion of a boxcar which had split onto the No. 4 and No. 5 tracks, while passing a particular switch. In other words, after going through the switch, one pair of wheels of the truck moved to one side of the switch on Track No. 4, and the other pair of wheels moved onto the other side of the switch onto Track No. 5.

In righting the wheels of the boxcar, a high lift truck was used with the aid of the fellow employees with pinch bars to force or restrain the movement of the boxcar slowly back and forth as needed in the process of righting the wheels. One end of a chain was harnassed to the truck and the other end of the chain was attached to the roping staple of the westerly part of the boxcar.

The truck moved along side a concrete pavement adjacent to the tracks on which the boxcar rested. The leverage portion of the switch mechanism was on the concrete pavement side of Track No. 5. The plaintiff's assignment placed him on the pavement in this area.

In the course of this operation of righting the wheels, a thud was heard and the plaintiff was seen falling or lying on the ground near the switch. At the same time it was obvious that the arm of the switch was seen to stand vertically, where just before it had been laying horizontally on the ground, and latched. No one had seen what had happened.

But whatever happened, it had been the cause of the plaintiff being struck in the jaw and being knocked to the ground with certain consequential results.

The plaintiff was seen to be in a dazed condition, but actually he had been knocked unconscious, and in the process had lost his memory to the noon of the day previous. He could not tell anything that happened from the previous day until his recovery of consciousness on the following day after the accident, in the hospital. The time in between remained, for the plaintiff, an absolute blank.

By this accident, the plaintiff suffered fractures of the upper and lower right jaws and a cerebral concussion. The plaintiff was attended by the company doctor, and after some lapse of time, eventually, returned to work, but he continued to suffer periodic headaches and restricted jaw movements. The testimony was that he could not open his jaws any more than one inch, thus interferring with his speech and eating. During the cold weather, the plaintiff suffered swelling and intense pain. There was no evidence that there would be any recovery in the future from the conditions which prevailed, or from the inconvenience and pain which he suffered.

While the defendant company paid his medical bills, the evidence showed the plaintiff had lost $1360.00 for wages during the time he was incapacitated and suffered from the injury which he received. He had been in the hospital from February 18, 1960 until March 6, 1960, but did not return to work until June 6, 1960. In addition to the fracture of the upper and lower right jaws and cerebral concussion, he sustained a contusion of the face and was left with an unsightly scar running almost from his ear to the point of his jaw.

The defendant raises three objections to the verdict: one, the plaintiff did not prove negligence on the part of the defendant; two, if the plaintiff had been struck by the switch arm as he maintained, that it was because he violated the instructions given to him by the fore-man, and therefore, the accident was caused by his own negligence; and three, under any circumstance, the jury's verdict was excessive.

Evidence was introduced by both sides on the question of whether or not the pressure of the wheels of the boxcar when straddling the switch which the wheels had split, could have activated the switch arm or released it from its catch. Defendant's witnesses asserted that this could not happen. The plaintiff's witness, a railroader for 52 years, testified that he had much experience with split switches, and that as a result of his experience, he could testify and did testify that wheels exert an enormous pressure when resting on a split switch, as happened in this case. This can and does activate switch mechanisms or levers into behaving as this one did at the time of the accident.

Since there were no other facts placed in evidence which could give any explanation for the cause of the happening of the accident, and since the arm of the switch was obviously sprung during the instant of the plaintiff's fall to the ground, the evidence, as produced, was properly a question for the jury. The jury resolved the question in favor of the plaintiff.

The defendant's testimony was to the effect that all of the men working at this place were told to keep away from the "operation". The inference was argued by the defendant that this included instructions to keep away from the "switch", even though the testimony was that the switch was in proper working order and had been proven so by tests made on several occasions and as late as the early part of 1961. Countering this testimony and argument was the evidence on the plaintiff's side that the foreman had warned the men to stay clear of the "chain" which had been attached to the tractor and the freight car.

The contention of the plaintiff is that at no time was any warning given to him or to the men to stay clear of the switch, itself. Here, too, was contradictory evidence which was a question for the jury.

The jury resolved this question also in favor of the plaintiff.

Were the first and second questions as decided by the jury supported by evidence? There is no question that the accident happened. It was equally proper for the jury to infer that the plaintiff was struck by the switch arm or handle. Was this place then an unsafe place where the plaintiff was required to work within the meaning of the Federal Employers' Liability Act? The plaintiff urges that when the defendant failed to warn the plaintiff, particularly an apprentice carman, of the danger existing around the switch, while it was under enormous pressure as produced by the wheels of the boxcar, that that was negligence on the part of the defendant which caused the plaintiff's injuries and therefore, the defendant required the plaintiff to work in an unsafe place.

 The issues of the defendant's alleged negligence and of the plaintiff's alleged negligence or contributory negligence were all submitted to the jury. There was need to have these questions resolved by the jury.

The defendant urges that the rulings in Dessi v. Pennsylvania Railroad Company, 251 F.2d 149 (3rd Cir. 1958), and Eckenrode v. Pennsylvania Railroad Company, 71 F.Supp. 764 (D.C.E.D.Pa. 1947) precluded the right to send these issues to the jury. Neither one of these cases involved any issue of adequate warning to an employee unfamiliar with the type of work he was engaged in at the time the injuries were sustained. This situation is different from the case at bar, and the cases cited do not apply here.

Was the verdict for $22,500 in favor of the plaintiff excessive? The plaintiff, unquestionably, suffered serious injuries. One may not pass off a heavy blow to the head as a light or meaningless incident. The fact that the plaintiff's consciousness was blanked out over a period of three days was in itself a disturbing injury. Disagreeable headaches and restriction of the movements of the jaws were and are distressing interferences with the plaintiff's natural and physical rights.

What monetary reimbursement should have been made to the plaintiff for these injuries was a question for the jury after it had heard all of the testimony in an orderly and unprovoked fashion. There was nothing in the verdict which in any sense could be considered as shocking the conscience of this court. Under these circumstances the verdict should be permitted to stand.

The motions for a new trial and for judgment N.O.V. will, therefore, be denied.