Vincent **MARMO**, Plaintiff-Appellee,

v.

**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, a corporation, Defendant-Appellant.**

No. 14799.

United States Court of Appeals
Seventh Circuit.

July 12, 1965.

---

Donald J. O'Brien, Jr., Chicago, Ill., for appellant.

Joseph Barbera, Chicago, Ill., Dom J. Rizzi, Chicago, Ill., of counsel, for appellee.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a Federal Employers Liability Act case with a $160,000 jury verdict and judgment. Defendant has appealed. We affirm.

Plaintiff, Marmo, was a machinist helper on the night shift in defendant's Chicago diesel engine repair shop when he was injured on January 8, 1962. He had worked for defendant since 1955, at various times as carman, carman's helper, oiler and car cleaner. In September 1960 he was made machinist helper and worked in that capacity until his injury.

On the night of the injury for which Marmo sued, he was helping machinist Johnson attach a truck—a complete unit of wheels, springs, brakes, and other parts—to the underside of a diesel engine. In performance of this operation a truck is placed on a movable table beneath a truckless diesel engine which stands on a north-south repair track. The table is raised and lowered by electrically controlled buttons located about twenty-five feet away on the west side of the repair track. The aim of the machinist is to raise the table and attach the truck to the engine by fitting a recessed casting on the top surface of the truck to a protruding casting on the underside of the engine.

When the fitting is properly made, the top casting is four inches inside the bottom casting. The truck is then locked in place by heavy, blunt hooks, one on each side, suspended on swivels from the engine's underside. These hooks are so constructed and placed that, when free, they are swung back by the rising truck and then swing forward into slots under the flat bearings located on each side of the truck outside the castings. The freedom of movement of the locks is controlled by levers or handles at the top of the hooks. Sometimes it is necessary, in order to hold the locks open and prevent interference with the rising truck, to attach wires or weights to the levers.

If there is a misalignment of the castings when the truck is raised into contact with the engine, it is often necessary to move the truck slightly north or south by use of a hand jack. Because the castings are bevelled, however, a slight misalignment of a small fraction of an inch can be tolerated because the upward movement of the truck will force the fitting of the castings. If the misalignment is too great, the castings will not coincide and the upward movement of the table can compress the powerful springs in the truck. When this condition exists, a slight amount of vibration can cause the castings to spring into alignment with great force.

Marmo's right hand was crushed when it was caught between the west side bearing of the truck and the corresponding bearing on the underside of the engine as the castings, which had not been in alignment, suddenly slipped into place. The hand was later amputated above the wrist.

■■ Defendant contends that there was no issue of liability and that the court erred in denying its motion for a directed verdict. On this contention we consider only the evidence favorable to Marmo and draw all reasonable inferences most strongly in his favor, and the contention must be rejected if on the evidence so considered a reasonable conclusion may be drawn that defendant's negligence played "any part at all" in Marmo's injury. Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506–507, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). If there were inconsistencies the jury was to resolve them.

■ We think the jury could with reason have concluded, in finding in favor of Marmo, that defendant, through its servants Bagnell and Johnson, was negligent as alleged in assigning Marmo to, and using him in, work of a dangerous type, knowing that he had no knowledge, training or experience in that work, and in not warning him of the dangers involved.

Foreman Bagnell testified that he was short three machinists on the night Marmo was injured and that he assigned him to help Johnson because of this shortage. This was Marmo's first experience

with this operation, but Bagnell gave him no instructions, though he testified that a misalignment of the castings would create a danger to anyone working in the immediate vicinity. Johnson, after the truck had been moved under the engine, merely showed Marmo how to operate the buttons to raise and lower the table and then had him raise the truck to within a few inches of the engine's underside. What occurred after that is in some conflict. We must take Marmo's version.

Johnson was on the east side of the engine, Marmo on the west side near the buttons. Johnson called to Marmo that something was wrong or stuck on the west side and to "take a look." Marmo then went to the west side of the table and stood on a small raised platform attached to the side of the table. Standing on the platform, his chin was about level with the truck top. He had a flashlight in his left hand and he put his right hand on the lower bearing for support. Looking into the three or four inch space between the upper and lower bearings he saw a piece of liner[1] sticking up in the lower casting and that the castings were not aligned properly, "a bit up from the North, about a half an inch." Then "everything came up like bullets" and his hand was crushed when the castings slipped together and the bearings met.

■ On these facts the jury could "with reason" infer that defendant owed Marmo the duty of not placing him in a hazardous position without warning him that what did happen might happen; and of instructing him about the care that had to be taken when looking to see what was preventing the truck from fitting into its position under the engine; and that failing in its duty, defendant's negligence played a part in causing Marmo's injury. Anderson v. Pittsburgh & Lake Erie R. Co., 217 F.Supp. 956, 957 (W.D. Pa.1962), aff'd per curiam 318 F.2d 727 (3rd Cir. 1963).

This is not a case comparable to Foreman v. Texas & New Orleans R. Co., 205 F.2d 79 (5th Cir. 1953), where a verdict in favor of a flagman who exposed himself to obvious danger was set aside. Nor does this court's affirmance of a directed verdict in Jackson v. Illinois N. Ry. Co., 224 F.2d 76 (7th Cir. 1955), where the plaintiff performed a job in an obviously dangerous manner, present a comparable case. The danger to Marmo was not obvious, as the danger in Cheffey v. Pennsylvania R. Co., 79 F.Supp. 252 (E.D.Pa.1948), was to Cheffey. And Marmo left his place of safety near the buttons when ordered to do so by Johnson, unlike the decedent in Atlantic Coast Line R. Co. v. Davis, 279 U.S. 34, 49 S.Ct. 210, 73 L.Ed. 601 (1928), who without any order left his place of safety on the running board of a steam shovel and moved to a place of obvious danger.

We see no merit in the claim that the district court erred in refusing to grant judgment n. o. v., Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), or that the court abused its discretion in denying a new trial on the question of negligence.

■ There is no merit either in defendant's argument that Marmo presented two inconsistent versions of the occurrence and thus was not entitled to have the case submitted to the jury. The alleged inconsistencies with Marmo's version on direct examination were in (1) a statement taken from Marmo, in the hospital, by defendant's investigator (which was introduced by defendant for impeachment purposes, and thus was not affirmative evidence, Jones v. City of Columbus, 134 F.2d 464, 465 (5th Cir. 1943)), (2) the unobjected-to closing argument of Marmo's counsel (which was not affirmative evidence, and the jury was so instructed), and (3) testimony elicited from defendant's witness Johnson on cross-examination (which also was not part of Marmo's affirmative case).

Defendant contends also that there is not substantial support in the evidence for the damages awarded. It argues

---

1. A two-piece band within the lower casting, designed to keep out dirt.

that the "enormous sum" awarded shows that the jury gave damages for injuries to Marmo's arm in addition to the loss of the hand and that there is no "reasonable medical certainty" to warrant the addition, and that the verdict is excessive, so that the trial judge abused his discretion by refusing to grant a new trial.

There is evidence that Marmo's arm was greatly swollen after the accident; that numerous incisions had to be made in the arm to decompress the nerves and blood vessels; that portions of muscles also oozed out of the incisions and had to be cut away, resulting in a permanent loss of musculature; that he has difficulty moving his elbow and shoulder joints; that there was a marked muscular atrophy of scapular muscles; that an extra-articular calcium deposit on the head of the humerous, which could have resulted from the accident, limits motion of the shoulder joint; and Marmo testified that he has a lot of pain "from the stump to the shoulder."

Marmo was thirty-eight years old when injured, with a life expectancy at the trial of thirty-one years. In 1961 he earned $5,056.75. He has not worked since. His only prior employment experience was operating a hand-fed punch press, driving a truck, and working on a farm in Italy. The amputation was two inches above the wrist and Marmo's medical expert testified that he could not make use of a prosthesis because of the painful and unsatisfactory condition of the stump. An operation to remove another one-and-a-half inches of bone and improve the condition of the stump will be necessary, but even then Marmo will not be able to use a prosthesis effectively because of the loss of musculature.

The evidence was heard by the trial judge, and the jury, which was properly instructed. We cannot say that the award was excessive as a matter of law or that the trial judge abused his discretion in denying the motion for a new trial on that ground.

We also see no abuse of the trial judge's discretion in admitting into evidence several X-rays taken prior to trial and not included in the pre-trial stipulation. They were admitted on the basis of the representation of Marmo's counsel that the X-rays were taken after the stipulation was entered into in the course of normal treatment and not for the purpose of surprise.

Affirmed.