Carl Eugene PHILLIPS, Appellant,

v.

The **CHESAPEAKE AND OHIO RAIL-
WAY COMPANY**, Appellee.

No. 72–1660.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1972.

Decided March 14, 1973.

---

Willard J. Moody, Portsmouth, Va. (Raymond H. Strople, Moody, McMurran & Miller, Portsmouth, Va., on brief), for appellant.

Aubrey R. Bowles, Jr., Richmond, Va. (Aubrey R. Bowles, III, Richmond, Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Carl Eugene Phillips appeals from a judgment entered upon a jury verdict in favor of the Chesapeake and Ohio Railway Company denying him recovery for injuries he suffered in two unrelated accidents. He principally complains about the district court's refusal to submit to the jury the issue of negligence with respect to the first accident and the issue of compliance with the Safety Appliance Act with respect to the second. He also assigns error to the admission and exclusion of evidence and to several of the court's instructions. Because the evidence presented factual issues for deter-

mination by the jury, we reverse and remand for a new trial.

I

■ The court limited the question of the C&O's liability for Phillips' first accident to the Safety Appliance Act. In determining whether the case should also have been submitted to the jury under the Federal Employers' Liability Act,[1] we "look only to the evidence and reasonable inferences which tend to support" Phillips' claims. Wilkerson v. McCarthy, 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497 (1949). Phillips was working as a field brakeman on a crew that was moving bad-order cars[2] to a shop track at the C&O Fulton Yard, Richmond, Virginia. His job was to stop the bad-order cars from rolling back if they failed to couple with stationary cars already on the shop track.

Testimony about the accident was in dispute, but Phillips' version was as follows: A bad-order car failed to couple after being twice kicked[3] to the shop track. On both occasions Phillips tried unsuccessfully to stop the car by placing a two-by-four under the wheels. On the third attempt to place the car on the shop track, the conductor in charge told him to mount the car and brake it. He did as he was told, but the brake failed to hold. Fearing a collision, he jumped off and injured himself. At trial, the conductor denied he ordered Phillips to ride the car, but he admitted that it was dangerous to ride cars being kicked to the shop track.

Phillips contends that the evidence was sufficient to submit C&O's negli-

---

1. Section 1 of the Federal Employers' Liability Act provides:
"Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars . . . ." 45 U.S.C. § 51 (1970).

2. The term "bad-order" cars included cars needing safety repairs as well as cars requiring only minor alterations, such as addition of loading racks. There is no evidence why the car on which Phillips was riding at the time of the accident had been sent to the shop track.

3. To "kick" a car to the shop track, an engine pushes it towards the track. When the engine stops, the car is allowed to roll freely to stationary cars with which it is supposed to couple on contact.

gence under the Federal Employers' Liability Act to the jury in three respects: (1) failure to provide adequate instruction and training; (2) failure to promulgate and enforce safety rules; and (3) failure to provide a safe place to work.

The Supreme Court has restricted the power of a trial judge to withdraw a negligence issue under the Act from the jury:

"Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities." Rogers v. Pacific R. R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

Applying this standard, we believe Phillips was entitled to have the jury determine the issue of negligence.

Phillips' contentions that the C&O was negligent in failing to provide adequate training and to promulgate and enforce safety rules are closely related. Phillips was eighteen years old, and he had received only four days training. He claimed that he had never been warned that mounting a car being kicked to the shop track was unsafe, nor had he been furnished a rule book prohibiting this practice. The C&O introduced some of its rules, but these did not include a regulation that forbade riding cars being kicked to the shop track. However, one of C&O's witnesses admitted that the practice was unsafe.

■ From this evidence, the jury could have found that the railroad had failed in its duty to train Phillips how to work safely as a brakeman on the shop track. Cincinnati, N. O. & T. P. Ry. v. Davis, 293 F. 481, 484 (6th Cir. 1923); Erie R. R. v. Collins, 259 F. 172, 177 (2d Cir. 1919). The same evidence would have enabled the jury to find that the C&O was negligent in failing to promulgate and enforce adequate safety regulations. Kimbler v. Pittsburgh & L. E. R. R., 331 F.2d 383, 386 (3d Cir. 1964).

■ Phillips' testimony that he was ordered to ride a car being kicked to the shop track, admittedly an unsafe practice, was sufficient to entitle him to have the jury decide whether the railroad, through its conductor, assigned him to an unsafe place to work. Moreover, the testimony of Phillips' father provided an additional reason for submitting the case to the jury on the grounds that the C&O failed to provide a safe place to work or that the conductor was negligent.

Phillips' father, who had some 27 years experience as a brakeman, was offered as an expert witness. He testified that, although kicking cars was normally a safe railroad practice, kicking bad-order cars to the shop yard was unsafe because the track was on an incline and the cars had something wrong with them. The district court excluded this testimony because Phillips was unable to prove that the car he was riding was defective.

The evidence should not have been excluded. The C&O's conductor in charge of the operation knew that many of the bad-order cars had safety defects, although he was unable to testify about the condition of this car. He also knew that it was dangerous to ride a car on the shop track. After two vain attempts to stop the car with a two-by-four, it should have been apparent to the conductor that this car, loaded with scrap iron, was too heavy to be controlled by chocking. From these facts the jury could have found that the railroad was negligent because its conductor ordered the car kicked to the shop track a third time instead of shoving it in by the locomotive, an operation that would have safely controlled the movement of the car.

The evidence conflicted on many of these points, and the railroad raised doubts about the credibility of Phillips' testimony. But since fair-minded men could differ over the evidence and the inferences that could be justifiably drawn from it, the issue of negligence under the Federal Employers' Liability Act should have been submitted to the jury. "To deprive [railroad] workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." Bailey v. Central Vermont Ry., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943).

## II

Several months after the first accident, Phillips returned to work and was injured while uncoupling cars. His job on this occasion was to pull the cut lever that releases a pin and uncouples the car. Phillips testified that he pulled the cut lever and gave the engineer a signal. However, the pin fell preventing the car from uncoupling. He jumped back, pulled the cut lever again, and felt a sharp pain in his leg as he stepped away. There was testimony that it is abnormal, though not unknown, for a pin to fall after it has been released to uncouple a car.

The district judge ruled this evidence was insufficient to show that the coupler was defective. He, therefore, refused to submit to the jury Phillips' claim that the C&O had failed to comply with the Safety Appliance Act,[4] and he limited the jury's consideration of the second accident to the question of the C&O's negligence under the Federal Employers' Liability Act.

The Safety Appliance Act imposes liability for defective uncoupling devices whether or not the railroad employee is going between cars to uncouple them when he is injured. Southern Pac. Co. v. Mahl, 406 F.2d 1201, 1204 (5th Cir. 1969). Furthermore, the mere failure of a safety device to operate properly at the time the employee is injured is sufficient to show that it is defective even if it operates properly before and after the incident in question. Myers v. Reading Co., 331 U.S. 477, 483, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947). Therefore, testimony that the pin fell abnormally and prevented the cars from uncoupling was sufficient to submit the issue of liability under the Safety Appliance Act to the jury. Cf. Penn v. Chicago & N. W. Ry., 335 U.S. 849, 69 S.Ct. 79, 93 L.Ed. 398 (1948), rev'g 163 F.2d 995, 997 (7th Cir. 1947).

## III

Phillips' other assignments of error require but brief comment. He complains that admission in evidence of a written statement he gave a C&O investigator following his first accident is barred by Virginia law.[5] The district judge carefully reviewed the federal decisions on this issue. He correctly treated the problem as one of federal law under Rule 43(a) of the Federal Rules of Civil Procedure and properly held the statement admissible. Scarborough v. Atlantic Coast Line R. R., 190 F.2d 935, 941 (4th Cir. 1951).

We find no merit in Phillips' insistence that the district court should have held him free of contributory negligence as a matter of law. With respect to the claims under the Federal Employers'

---

4. 45 U.S.C. § 2 (1970) provides:
    "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

5. Va.Code Ann. § 8-293 (1950) provides in part:
    ". . . [I]n an action to recover for a personal injury or death by wrongful act or neglect, no ex parte affidavit or statement in writing other than a deposition, after due notice, of a witness as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case."

Liability Act, this issue presented a question for the jury.

The district court instructed the jury that Phillips did not assume the risk of danger of injury. It added, however, that if Phillips' injuries were caused by normal risks or hazards which were inherent in the work, and not by the railroad's negligence or violation of the Safety Appliance Act, Phillips could not recover. This explanation was likely to confuse rather than instruct the jury. Because the doctrine of assumption of risk played no part in the case, all reference to it and to risk inherent in the work could have been omitted from the charge without detracting from it.

We find no merit in Phillips' other assignments of error. The judgment is reversed, and the case is remanded for a new trial.