**Gene A. RUTHERFORD, Jr.,**
**Plaintiff–Appellant,**

v.

**LAKE MICHIGAN CONTRACTORS,**
**INC., Defendant–Appellee.**

No. 00–1850.

United States Court of Appeals,
Sixth Circuit.

Jan. 7, 2002.

Before GUY and BOGGS, Circuit
Judges; and CARR, District Judge.*

PER CURIAM.

Plaintiff appeals from the grant of summary judgment in favor of defendant, Lake Michigan Contractors, Inc., on his negligence claim under the Jones Act, 46 App. U.S.C. § 688, and his common law admiralty claim of unseaworthiness. After review, we affirm on other grounds.

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

## I.

Defendant is a dredging company headquartered in Holland, Michigan. Plaintiff was a deckhand on defendant's tugboat, the *Shirley Joy*. The tugboat was being used in a dredging project on the Genessee River in Rochester, New York. Plaintiff injured his back on August 20, 1997, while handling a steel cable on the tugboat.

Three types of vessels are used in the dredging process: a dredge, a barge, and a tugboat. The dredge contains a large crane, which loads debris removed from the riverbed onto a barge. Once loaded, the barge is pushed and/or pulled by a tugboat to a dumping area where the debris is unloaded. The tugboat returns the empty barge to the dredge and maneuvers it into position next to a newly loaded barge. The empty barge is held in place by the crane, while the tugboat ties up to the loaded barge for the purpose of towing it to the dumping area. After the loaded barge is removed, the crane pulls the empty barge next to it, ties up, and resumes the loading process.

The tugboat is tied to the barge by two cables. At the end of each cable is a loop made of hemp, which is put over the cleats on the barge to "marry" the two vessels. Two tugboat deckhands are responsible for attaching or "facing" a barge to the tugboat. One deckhand stays on the tugboat. He removes the cable from the deck of the tugboat and passes it approximately six to ten feet below to the other deckhand standing on the barge, who attaches the cable to the barge.

Two types of cables were used at different times on the *Shirley Joy*. One type was made of a synthetic material, and the other type was made of steel. The syn-

thetic cable was much lighter than the steel cable. The hoop section of the steel cable used at the time of plaintiff's injury weighed approximately 120 to 150 pounds.

Plaintiff alleges he injured his back when he passed a steel cable from the tugboat to another deckhand on the barge. After experiencing a sharp pain in his back, plaintiff climbed down onto the barge to assist in "unfacing" the dredge line from the loaded barge. While attempting to lift the cable at the stern end of the barge, plaintiff alleges he felt "excruciating pain" and "blacked out." He was removed from the barge by the Coast Guard and taken to an ambulance on shore.

Plaintiff brought this action alleging that he was injured as a result of defendant's negligence and the unseaworthiness of the *Shirley Joy*. The district court granted defendant's motion for summary judgment, and plaintiff appeals.[1]

## II.

We review *de novo* the district court's grant of summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P.56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must determine whether there is "evidence on which the jury could reason-

---

**1.** Plaintiff also made a claim for maintenance and cure in his complaint. The district court granted summary judgment with respect to maintenance but found a question of fact existed as to whether all cure expenses had been paid by defendant. The parties subsequently settled the maintenance and cure claim, and thus, it is not a subject of this appeal.

ably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Jones Act Negligence

■ Under the Jones Act, a seaman may recover damages for personal injury caused by a shipowner's negligence. 46 App. U.S.C. § 688. *See Perkins v. Am. Elec. Power Fuel Supply, Inc.,* 246 F.3d 593, 598 (6th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 462, 151 L.Ed.2d 379 (2001) (No. 01–325). Negligence is determined under the normal ordinary prudence standard. The defendant must breach a duty to protect against foreseeable risks of harm. *Id.* at 599. After negligence is proven, the plaintiff need only show that the shipowner's negligence is the cause in whole or in part of his injuries. In essence, there is a reduced standard for causation between the shipowner's negligence and the seaman's injury. *Id.* at 598.

In reviewing summary judgment under the Jones Act, we are mindful of the "policy of providing an expansive remedy for seamen who are injured while acting in the course of their employment." *Rannals v. Diamond Jo Casino,* 265 F.3d 442, 447 (6th Cir.2001) (internal quotation marks and citation omitted). We also recognize that summary judgment is inappropriate if the shipowner's negligence played any part in the seaman's injuries. *Daughenbaugh v. Bethlehem Steel Corp.,* 891 F.2d 1199, 1204–05 (6th Cir.1989). Nonetheless, even under the Jones Act, summary judgment is appropriate where plaintiff fails to present evidence showing a genuine issue of material fact as to negligence. *See Doty v. Illinois Cent. R.R. Co.,* 162 F.3d 460, 463 (7th Cir.1998) (relaxed evidentiary standard does not require a trial when no evidence offered to support an inference of negligence).

Plaintiff argues that the risk of back injury from one person handling a steel cable was foreseeable because other deckhands complained of sore backs. The only evidence of these complaints, however, is plaintiff's own testimony: "I've heard guys say their back is sore from lifting cables." (J.A. at 484.) Such hearsay evidence may not be relied upon by a court ruling on a motion for summary judgment. *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 374 (6th Cir.1999).

Even if plaintiff's hearsay testimony is considered, it is not reasonable to conclude from the description of relatively minor complaints of sore backs that defendant knew or should have known that back injury could result from one deckhand lifting a steel cable. Indeed, plaintiff testified that during his first 19 days working as a deckhand, he had no pain in his back other than being a "little sore." (J.A. at 484.)

Just as importantly, there was no evidence that plaintiff or any crewman brought this issue to defendant's attention. "It is a fundamental principle that, under the Jones Act, an employer must have notice and the opportunity to correct an unsafe condition before liability will attach." *Perkins,* 246 F.3d at 599 (internal quotation marks and citation omitted). Plaintiff asserts that everyone complained and refers to the testimony of another deckhand, who testified:

Q. . . . . Did you ever find or have any problems with the use of steel cables in the other marine jobs you've had?

A. No. that's all I've ever used.

Q. Prior to August 20th, did Gene Rutherford ever complain about the use of steel cables to you?

A. Well, that was something we all more or less complained, you know, it was just a pain. Once we had the lightweight Kevlar, they were nice, they

were easy to handle but, you know, it was a thing of that's what we had, that's what was on there and that's what we used.

(J.A. at 437.) This testimony does not show that any seaman experienced back pain or injury, or that any complaints about possible injuries were brought to defendant's attention.

The crew list for the *Shirley Joy* listed four deckhands. Plaintiff and another deckhand testified, however, that only three deckhands were on board at any one time. Two were on duty, and the third was on call to assist as needed. Plaintiff argues that there is a question of fact as to whether it was negligent to not have four deckhands on board the *Shirley Joy*. Plaintiff speculates that if four deckhands had been on board then two deckhands may have been available to hand the steel cable from the tugboat to the barge. The district court found that, regardless of whether two deckhands were available, plaintiff did not show that this task could not be safely handled by one deckhand. We agree. There was no evidence upon which a jury could reasonably find that back injury was a foreseeable risk from one person lifting a steel cable.[2]

It was uncontroverted that the use of steel cables was common in dredging operations.[3] Plaintiff argues that industry standard is not a measure of due diligence. Compliance with industry standard, however, is relevant, if not conclusive, evidence. *See Cherokee Ins. Co. ex rel. Weed v. E.W. Blanch Co.*, 66 F.3d 117, 123 (6th Cir.1995). There was no evidence that having one deckhand handle a steel cable was either dangerous or an unorthodox method or practice. All that plaintiff showed in this case is that he hurt his back while performing a task that was routinely and frequently performed by deckhands without injury.

■ Plaintiff finally argues there is a question of fact as to whether defendant's failure to properly train him and failure to require certain safety equipment, *i.e.*, weight belts, constituted negligence. The duty to provide proper training and suitable methods to perform a task is limited to hazards that defendant could have foreseen. *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F.Supp. 1566, 1571–72 (N.D.Ill. 1996). The district court did not rule on the issue of training and safety equipment. Summary judgment, however, must be affirmed if correct for any reason including one not considered by the district court.

2. The district court found that plaintiff had not shown a breach of duty by defendant where there was a third crewman on board and where there was no evidence that plaintiff requested assistance. The district court also found that plaintiff failed to establish that the absence of a fourth seaman played any role in his injury when he failed to ask the existing third deckhand for assistance. Assumption of risk is not a defense to a seaman's claim for injuries under the Jones Act. *See Burden v. Evansville Materials, Inc.*, 840 F.2d 343, 346 (6th Cir.1988). Whether plaintiff asked for assistance from the third crewman who was unquestionably available to assist goes to the issue of comparative negligence, which allocates fault and liability but is not a bar to recovery. *Id.*

3. The parties argue at length about why defendant was using steel cables when plaintiff was injured. Defendant asserts that it was because the synthetic cables kept breaking. Plaintiff claims that it was simply a matter of cost or inefficient purchasing practices. The parties do not agree on which type of cable breaks more easily and which type presents more danger to the crew when it breaks. We agree with the district judge that these disputed issues of fact are not relevant because plaintiff was not injured by a snapped cable. The question of why steel was used and whether steel was more or less likely to break does not answer the relevant question on negligence—was it foreseeable that one deckhand lifting a steel cable would injure his back.

*Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir. 1985).

All of the cases relied on by plaintiff are distinguishable by the existence of evidence of negligence. In *Marmo v. Chicago, Rock Island & Pacific Railroad Co.,* 350 F.2d 236, 239 (7th Cir.1965), the court held that a jury could reasonably find that the defendant had a duty not to place plaintiff in a hazardous position without warning him of what might happen and instructing him on the care to be taken. The plaintiff, however, was performing "dangerous" work, and defendant knew that plaintiff had no knowledge, training, or experience. *Id.* at 238. In *Phillips v. Chesapeake and Ohio Railway Co.,* 475 F.2d 22, 24 (4th Cir.1973), the court held that where plaintiff received only four days of training, a jury could reasonably find that the employer breached its duty to train. One of the defendant's witnesses, however, admitted that the practice that resulted in plaintiff's injury was "unsafe." *Id.* In this case, by contrast, lifting a steel cable is not inherently hazardous, and a jury could not reasonably so find in light of the evidence that the task was frequently and routinely performed by one deckhand without injury.[4]

▮ Plaintiff worked as a deckhand for approximately three weeks before he was injured. Plaintiff testified that his training consisted of observing another deckhand perform his duties. Plaintiff said that he knew how to lift as a matter of common sense, but he was never taught how to physically handle the cable. He also testified that because of the configuration of the side of the tugboat, he could not bend at the knees while lifting the cable. Plaintiff testified that he did not feel that he was trained properly. He failed to present any probative evidence, however, to support this conclusory and unsubstantiated testimony on training. He offered no evidence as to how his training was defective or what training would have met a minimal safety threshold. Even when viewing his testimony in a light most favorable to plaintiff, he failed to raise a genuine issue as to the effectiveness or adequacy of his training.

Plaintiff also relies on an accident report as evidence of negligence in training. In that report, one of defendant's employees noted that the cause of the accident was the "weight of the cable" and "unfamiliarity of cable pulling techniques." It also states that "[s]ynthetic lines that are stronger yet lighter weight will be reinstalled" to prevent recurrence. (J.A. at 147.) While this may be relevant evidence on the issue of causation, it does not address whether it was foreseeable that the type and level of plaintiff's training would result in injury. Causation does not equal breach; they are separate elements, each of which must be proven. *See Zarecki,* 914 F.Supp. at 1575.

With respect to safety equipment, it is not clear whether weight belts were on board the *Shirley Joy.* Plaintiff claims in his brief that there was evidence that a weight belt might have prevented the accident. The evidence, however, is not described or identified. A court has no duty to search the entire record to ensure that there is no genuine issue of material fact. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). The nonmoving party has the burden of directing the court's attention to specific portions of the record upon which it seeks to rely to

---

4. Plaintiff also cites *Bailey v. Central Vermont Railway,* 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943). While the Court noted that Bailey was unskilled, his training or lack of training was not at issue in that case.

create a genuine issue of material fact. *In re Morris,* 260 F.3d 654, 665 (6th Cir.2001). Whether weight belts were present or not, plaintiff failed to meet this burden in showing a genuine issue of material fact. There was no evidence upon which a jury could reasonably find that weight belts would have prevented plaintiff's injury or reasonably find that defendant's failure to provide them constituted negligence.

In effect, the only relevant evidence plaintiff presented in response to the motion for summary judgment was that the steel cable was heavy and that plaintiff injured his back while handling it. He presented no evidence that this was anything more than an unfortunate injury suffered during the execution of a frequent, routine duty of a deckhand. The mere fact of injury is not sufficient. *See Marvin v. Cent. Gulf Lines, Inc.,* 554 F.2d 1295, 1297 (5th Cir.1977). A plaintiff under the Jones Act must produce some evidence of negligence, which plaintiff has failed to do.

### B. Seaworthiness

■ Under the seaworthiness doctrine, there is an absolute duty to maintain a seaworthy ship, the breach of which imposes liability without fault. *Perkins,* 246 F.3d at 602. The shipowner is not required, however, to furnish an accident-free ship. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Plaintiff may recover under the theory of unseaworthiness if he demonstrates that the defendant failed to provide a vessel that was reasonably fit for its intended purpose to permit the seaman to perform his task with reasonable safety. *See Lyons v. Ohio River Sand and Gravel Co.,* 683 F.2d 99, 101 (4th Cir.1982). A shipowner may be held liable when it supplies insufficient equipment or crew. *See Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). Once unseaworthiness is shown, plaintiff must prove that the unseaworthy conditions caused his injury. *Id.*

Plaintiff claims there are issues of fact as to whether the use of steel cables, the failure to have four deckhands, and the failure to have weight belts on board rendered the *Shirley Joy* unseaworthy. The district court in this case found that defendant was entitled to summary judgment because plaintiff offered no evidence that the steel cable was defective or that the manner in which it was being handled was unsafe. We agree.

Plaintiff claims that this case is "on all fours" with *Waldron v. Moore–McCormack Lines, Inc.,* 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967). In *Waldron,* the Supreme Court reversed the grant of summary judgment where a seaman was injured while carrying a heavy rope. The ship's mate ordered two men to carry the rope. Expert testimony was presented that three to four men, rather than two, were required to carry the rope in order to constitute safe and prudent seamanship. *Id.* at 725, 87 S.Ct. 1410.

In stark contrast, there was no evidence, expert or otherwise, in this case that one deckhand could not safely handle a steel cable. There was no evidence on the condition of the steel cable that plaintiff was handling, other than that it was heavier than the synthetic cable, and that it weighed 120 to 150 pounds. Nor was there any evidence that weight belts were necessary to permit the deckhands to lift the steel cable with reasonable safety. It is not sufficient to simply pose the question of unseaworthiness. Plaintiff was required to present evidence upon which a jury could reasonably find that having only one deckhand without a weight belt handle a steel cable rendered the *Shirley Joy* unseaworthy. Summary judgment was

proper in light of the lack of any such evidence.

AFFIRMED.